Syllabus.

## Richmond

### J. M. WITHROW'S EXECUTRIX, ET AL, V. BEN PORTER.

#### November 17, 1921.

1. RES JUDICATA—*Ejectment—Equitable Defense—Enjoining Judgment in Ejectment—Case at Bar.*—In a suit to enjoin the enforcement of a judgment in ejectment, the judgment in ejectment does not bar complainant from setting up that he holds the land in question under a contract of sale with the owner.

2. RES JUDICATA—*Ejectment—Equitable Defense—Enjoining Judgment in Ejectment—Case at Bar.*—If the fact that defendant holds the land in question under a contract of sale is not one of the equitable defenses which may be set up in an action of ejectment (Code of 1919, sections 5471 and 5472), any offer of it would of course be futile. If, on the other hand, it was such a defense, then under the express terms of the Code of 1919, section 5473, whether defendant does or does not attempt such equitable defense, he is not precluded from resorting to equity.

3. EQUITY—*Demurrer—Defendant Limited to Ground of Demurrer Stated.*—In a proceeding to enjoin the enforcement of a judgment in ejectment, defendant demurred on the ground that the subject matter in controversy was settled by a judgment in an action of ejectment.

   *Held:* That this language was not sufficient to put the complainant on notice that the defendants intended to claim that the bill did not state equities that ought to prevail over defendant's legal title under the judgment in ejectment.

4. EQUITY—*Bill—Facts Alleged Sufficient on Demurrer in a Bill to Restrain Enforcement of a Judgment in Equity.*—In a bill to restrain the enforcement of a judgment in equity, complainant alleged that he had a contract for the purchase of the property and that a receipt relinquishing his rights under such contract was fraudulently obtained from him by the purchaser. And altogether the bill substantially stated grounds upon which, if proved, complainant would be entitled to a specific execution of the contract of sale.

*Held:* That defendants' contention that the bill did not state equities that ought to prevail over the defendant's legal title under the judgment in ejectment was unsound.

5. EQUITY—*Pleading—Demurrer or Exception to Answer—Motion to Strike Out.*—In a so-called demurrer to the answer and cross-bill in a suit in equity, complainant "excepts and demurs to the answer of the defendants filed in this court and moves that the same be dismissed and stricken out on the following grounds." No objection was made to the form of this paper, and it may be regarded as a substantial compliance with section 6123 of the Code of 1919, abolishing exceptions to answers for insufficiency, and substituting therefor a motion to strike out.

6. EQUITY—*Demurrer to Answer and Cross Bill—Harmless Error.*—A so-called demurrer to an amended answer and cross bill was in writing, and while it was not good practice to demur to the answer, and the language of the so-called demurrer and of the decree thereon were not in compliance with section 6123, Code of 1919, yet as no objection was made to the form of procedure in the lower court, if the action of that court in rejecting the answer had been correct in result, the error in the form of procedure would be treated as harmless and disregarded by the Supreme Court of Appeals.

7. ANSWERS—*Time of Filing—Section 6122, Code of 1919.*—In a suit in equity a second answer, like the first, was filed by leave of court, and as to the second, it appeared from the decree that the court expressly held that the reasons for the delay in filing were sufficient, and expressly authorized the filing of the answer.

*Held:* That a claim that the answer was filed too late could not be sustained under the provisions of section 6122 of the Code of 1919, which expressly provides that additional time for filing may be granted by the court upon good cause shown.

8. VENDOR AND PURCHASER—*Installment Contract of Sale—Provision Changing Contract of Sale to Rental Contract—Case at Bar.*—A contract for the sale of land on instalments contained a provision that upon failure of the purchaser to make the instalment payments the contract should become void as a contract of sale, and payments by the purchaser thereon should be regarded as payments of rent at a certain sum per month. On the back of this contract an agreement of a later date was indorsed, signed and acknowledged by the purchaser, acknowledging the receipt of a receipt for rent from the vendor and relinquishing and releasing the vendor from any claim or liability for money paid in connection with the terms of the writing on the reverse side.

*Held:* That, construed together, the two papers could only have
meant that the parties recognized the termination of the sale
feature of the contract and its conversion into a rental contract,
and unless tainted by fraud on the part of the vendor, the
transaction was a valid one and required no new consideration,
and barred the purchaser's right to the enforcement of the con-
tract upon payment of the balance of the purchase money.

Appeal from a decree of the Circuit Court of Rockbridge
county.   Decree for complainant.   Defendants appeal.

*Reversed.*

The opinion states the case.

*Wallace Ruff* and *Curry & Curry,* for the appellants.

*Hugh A. White,* for the appellee.

KELLY, P., delivered the opinion of the court.

This is a suit in equity, originally brought by Ben Por-
ter against J. M. Withrow and others, and subsequently
revived against Withrow's executrix, the purpose of which
was to enjoin the enforcement of a judgment in ejectment
theretofore obtained by Withrow against Porter for a cer-
tain house and lot, and to obtain a decree for the specific
performance of an alleged contract for the sale thereof by
Withrow to Porter.   The relief prayed for was granted by
the circuit court.

The bill was filed in July, 1919.   A satisfactory disposi-
tion of the controversy before us will necessitate a some-
what full statement of the principal allegations made by the
complainant, which, in substance, were as follows:

That on the 27th day of August, 1912, the complainant,
Ben Porter, entered into a written contract with J. M. With-

row whereby the latter agreed to sell to the former a certain house and lot situated in the town of Lexington, an unsigned copy of the contract being exhibited and filed with the bill as a part thereof;

That complainant cannot read and write, but believes that Withrow signed a duplicate copy of the contract and kept the same in his possession;

That complainant was to pay. $750 for the property, of which $50 was to be paid in cash and the balance in payments of $10 per month, the deferred payments to bear interest;

That the complainant complied with his contract literally for a long time after it was made, but later for various reasons sometimes omitted the payments when due, but that such omissions were fully understood and acquiesced in by Withrow;

That the last payment was on May 2, 1917, at which time Withrow made no claim that there had been any forfeiture of complainant's contract;

That during a large part of the time since the date of the contract, Withrow was drunk or incapacitated by a drug habit, and not in a condition to receive money or transact business, and during a part of that time was in an aslyum, with no committee or other person to whom payments could be made;

That some time prior to July 2, 1917, Withrow employed counsel, and thereupon claimed that complainant had forfeited his rights as a purchaser;

That the complainant also employed counsel, and was advised not to sign any papers without the latter's advice;

That on July 2, 1917, Withrow offered complainant a paper or receipt, copy whereof was exhibited and filed with the bill and made a part thereof, which. the complainant thought was for a part payment on the house and lot, but that the words and conduct of Withrow in connection there-

with led the complainant to suspect an attempt to deceive him;

That complainant took this paper to his attorney, was advised that it represented a claim on Withrow's part that complainant had forfeited his purchase and was renting the property, and that he was also advised not to make any further payment unless it was received and accepted as a part of the purchase money;

That complainant has made no further payment, although he has been ready, willing and anxious to pay the balance in full and complete his purchase;

That since complainant took possession of the property he has paid $380 or more on the contract, and has, with the knowledge of Withrow, permanently improved the property to the extent of $103 and has also paid all the taxes thereon except for the year 1918, and would have paid them for that year if he had not found on going to the treasurer's office to make the payment that Withrow had already paid the same;

That on July 14, 1917, Withrow executed a deed of trust on the property mentioned to secure the payment of $1,000 to the Rockbridge Building and Loan Association, the deed of trust embracing other property abundantly sufficient to secure the debt, and complainant avers that Withrow, knowing he had no right to claim a forfeiture of the contract with complainant, placed this deed of trust on the property that he might thereby defraud and defeat complainant by placing the property in the hands of an innocent purchaser; but that neither the trustee in the deed of trust, B. P. Ainsworth, nor the beneficiary, building and loan association, are innocent purchasers, as Ainsworth, trustee, was of counsel for Withrow, and was fully cognizant of complainant's rights;

That in October, 1918, Withrow, together with Ainsworth, trustee, instituted an action of ejectment against complainant to recover the property, "and this for the purpose of

carrying out his intentions when he made the said deed of trust;" and that in said action complainant, "under the rules of law pertaining to an action of ejectment was prevented, and not allowed to make his equitable defense as hereinbefore set forth, and judgment was rendered against him" in May, 1919;

That after the said judgment in ejectment was rendered, Withrow, through his counsel, stated that all he wanted was his money with interest, and complainant through his counsel offered to pay Withrow all that was due him under the contract, requesting a statement of what was due, and that a statement was rendered which complainant found to be unjust and incorrect, and that Withrow refused to accept settlement upon a correct and legal calculation of the amount of principal and interest due.

The prayer of the bill was that the said Withrow, Ainsworth, trustee, and the building and loan association be made parties defendant; that the execution of the judgment in ejectment be enjoined and restrained until complainant's rights could be determined; that complainant be permitted to complete his payments for the property purchased as set out in the bill; that the balance which he owed thereon to Withrow be treated as a mere lien against the property; that a full accounting of what he owed Withrow be had; and for general relief.

The contract of August 27, 1912, referred to in the bill was as follows:

"Contract, made this the 27th day of August 1912, by which J. M. Withrow agrees to sell to Ben Porter, that certain house and lot situated on the north side of Randolph street in the town of Lexington, Va., and fronting 36 ft. 4 in. on said street and extending back 79 ft. 8 in. to a buggy shed, it being the same property which was conveyed to the said J. M. Withrow by deed from Mrs. Lucy M. Ifaughawaut of date June 15, 1905, and recorded in deed book No.

98, at page 411, in Rockbridge county clerk's office, to which deed reference is hereby made for a more accurate description of this property, for the consideration of seven hundred and fifty ($750.00), of which fifty dollars ($50.00) has been paid in cash, receipt of which is hereby acknowledged, and the balance is to be paid in payments of $10.00 or more per month until the purchase price with interest at 6% per year shall have been paid in full, together with any taxes, insurance, or other costs that may have been advanced by said Withrow.

"Said Porter is to keep the taxes paid up on this property, and also keep the property insured, for the benefit of the said Withrow, both of which shall be prorated as of this date.

"On the completion of the payments as called for under this contract said Withrow guarantees to give a good and sufficient deed of general warranty to said property.

"In case of the failure of said Porter to make the payments of at least $10.00 per month, then this contract shall become null and void as to the contract of sale, and whatever shall have been paid by said Porter shall be regarded as rent at $6.00 per month."

The paper or receipt of July 2, 1917, referred to in the bill, is as follows:

"Lexington, Va., July 2, 1917.

"Received of Ben Porter in full to January 1, 1918, on house that he now occupies on Randolph street.  On January 1, 1918, I agree that, at my option, I will give him $36.00 cash or a receipt in full for rent on this house to July 1, 1918."

A preliminary injunction against the execution of the judgment was awarded which was never afterwards specifically enlarged or perpetuated, but such proceedings were had in the cause as that a final decree was entered in favor

of Porter, whereby he was given the right to pay the balance of principal and interest on the purchase money as originally agreed upon, and upon making such payment to have a deed for the property. From that decree this appeal was allowed.

There was a demurrer to the bill which the court overruled, and this action is the basis of the first assignment of error.

The grounds of the demurrer were stated in writing, and were two in number. It is conceded by counsel for appellants that the second ground was not good, and that the validity of the demurrer depends upon the first ground, which was as follows: "The subject matter in controversy was heretofore settled by judgment of the Circuit Court of Rockbridge county pronounced on the — day of May, 1919, in an action of ejection under the style of *J. M. Withrow* v. *Ben Porter.*"

[1, 2] This ground of demurrer was clearly unsound. There is a good deal of discussion in the briefs as to whether the bill alleged such a contract as would have entitled Porter under section 5471 of the Code to set it up as an equitable defense to the action of ejectment. The discussion seems immaterial. The bill alleges that the equitable defense as therein developed was in fact not made in the action at law. Whether it was attempted or not is unimportant. If it was not one of the two equitable defenses which under sections 5471 and 5472 of the Code may be set up in an action of ejectment, then, of course, any offer of it would have been futile, and the complainant's only remedy would have been in equity. If it was such a defense, then under the express terms of section 5473 of the Code it is provided that whether a defendant in ejectment "shall or shall not attempt such defense, he shall not be precluded from resorting to equity for any relief which he would have been entitled to" if sections 5471 and 5472 had not been enacted.

[3, 4] Counsel for appellants concede that they are restricted upon the demurrer to the ground there above quoted, and admit that this places them upon "a narrow neck of land," but they contend that the language of that ground of demurrer is sufficient to put the complainant on notice that the defendants intended to claim that the bill did not state equities that ought to prevail over the defendant's legal title under the judgment in ejectment.   We are unable, however, to accept this view without giving to the language used an unnatural and strained construction.   Furthermore, if we could sustain that view, we think that the bill itself substantially stated grounds upon which, if proved, the plaintiff would be entitled to a specific execution of the contract of sale.   If there were nothing else in the case except the contract and receipt exhibited with the bill, and if the receipt was given to and accepted by Porter as the result of a fraudulent scheme on the part of Withrow to defeat the former of his rights under the contract of purchase, then the receipt ought to be disregarded as evidence, and the mere fact that Porter was in default as to his payments would not have operated as a forfeiture of the contract, and he would have been entitled to a deed upon the payment of the balance of the purchase money with interest.   *East* v. *Atkinson,* 117 Va. 490, 494, 85 S. E. 468.   There was no error in overruling the demurrer to the bill.

The next assignment of error to be considered involves the action of the court in rejecting, first, an original answer and cross bill, and, second, an amended answer and cross bill offered and filed by the defendants.

The temporary injunction above mentioned was awarded in vacation on July 22, 1919.   No further order was entered and nothing else appears to have been done in the cause until May 18, 1920, at which time a decree was entered reciting the death in February, 1920, of J. M. Withrow, directing that the cause as to him should thereafter proceed in

the name of his administratrix (subsequently corrected to executrix), admitting Addie L. Withrow, widow and devisee of J. M. Withrow, to come into the case as a party, noting the demurrer to the bill, authorizing the filing of an answer and cross bill by the defendants, with "demurrer" thereto by complainant, and continuing the case for consideration and further decree in vacation.

[5] The subsequent action upon the demurrer to the bill has been stated and disposed of. The so-called demurrer to the answer and cross bill referred to in the above recited decree was in writing, and was as follows:

"The plaintiff in this cause comes and excepts and demurs to the answer of the defendants filed in this court and moves that the same be dismissed and stricken out on the following grounds:

"1st. Instead of being an answer the paper filed purporting to be an answer sets up entirely new matter as a defense to the bill which can only be done by a cross bill.

"2nd. The matters set up in defense in said answer, even if properly presented by answer, are not sufficient in law because the answer admits a written contract between the plaintiff and J. M. Withrow, said contract being a sale and purchase of real estate, and the said answer offers nothing to show that said real estate has ever been sold or transferred back from the plaintiff to J. M. Withrow.

"The plaintiff, therefore, prays that the said answer be dismissed and stricken from the record."

No objection was made to the form of this paper, and it may be regarded as a substantial compliance with section 6123 of the Code, abolishing exceptions to answers for insufficiency, and substituting therefor a motion to strike out.

On the 8th of September, 1920, a decree was entered overruling the demurrer to the bill (as already stated), but sustaining the demurrer and motion to dismiss the answer, with leave, however, to the defendants "to file an amended

or additional answer, or take such other proceedings as they may be advised." That decree further adjudicated that the complainant was entitled to have the amount due by him to the estate of J. M. Withrow on the contract of purchase duly fixed and ascertained, and when so fixed and ascertained and paid, to have a deed for the house and lot, and referred the cause to a commissioner to make up an account showing the balance due.

On November 19, 1920, the defendants filed their petition, praying that they might be allowed to file an amended answer and cross bill, and on the same day an order was entered noting that petition and the objections of complainant to the filing of the amended answer and cross bill.

On May 18, 1921, the plaintiff filed the following paper, called a demurrer to the amended answer and cross bill, to-wit: "The plaintiff comes and demurs to the amended answer and cross bill, and for grounds therefor says: 1. It is too late to file such answer and cross bill. 2. The answer is not sufficient in law, for the same reasons as set up in the original demurrer to the original bill" (meaning *answer*).

On the 18th of May, 1921, the court entered a decree, which, so far as material here, contains the following recitals and adjudications:

(a) That the cause came on to be heard upon the papers formerly read, upon the first report of the commissioner filed in November, 1920, and exceptions thereto, on the petition and amended answer and cross bill "filed by leave of court on the 19th of November, 1920;" (b) that the reasons for the delay in the filing of the amended answer and cross bill are deemed sufficient and "the court doth formally authorize and approve the filing of said amended answer and cross bill;" (c) that the plaintiff filed a demurrer to the amended answer and cross bill;" (d) that the demurrer to the amended answer and cross bill is well taken

and is sustained, but with leave to the defendants to take such further proceedings as they may be advised; (e) that the cause is recommitted to the commissioner to restate at the bar of the court the account appearing in his first report; (f) that the commissioner thereupon, in compliance with the above direction, appeared and submitted a restatement of the account; (g) that the statement of the account was correct and ratified and confirmed in all respects; (h) and that when the complainant, Ben Porter, shall have paid off the amount as therein fixed, the executrix of J. M. Withrow shall make to Porter a deed with general warranty for the property.

[6, 7] As shown above, the so-called demurrer to the amended answer and cross bill was in writing. It was, of course, not good practice to demur to the answer, and the language of the decree and the language of the so-called demurrer were not in compliance with section 6123 above cited, but no objection was made to the form of procedure in the lower court, and if the action of the court in rejecting the answer had been correct in result, the error in the form of procedure would be treated as harmless and would be disregarded in this court. But dealing with the objections to the answer in this way, if the first objection, which was that the answer was filed too late, meant to invoke the provisions of section 6122 of the Code, which provides that an answer in equity must be filed within six months from the date of the service of process unless after notice to the adverse party, and for good cause shown, additional time be granted by the court, then the point is not good. The second answer, like the first, was filed by leave of court, and as to the second, as appears from the abstract of the decree last referred to, the court expressly held that the reasons for the delay were sufficient, and expressly authorized the filing of the answer.

We come now to the real point in the case: Did the court err in rejecting the first and second answer and cross bill,. and in proceeding to adjudicate the rights of the parties upon the record without regard to such pleadings?

[8] The chief reason assigned by the complainant for the rejection of the original and amended answer and cross bill was that the matters of defense set up therein were not sufficient in law, because they "admitted a written contract between the plaintiff and J. M. Withrow, said contract being a sale and purchase of real estate, and   *   *   offer nothing to show that the said real estate has ever been sold or transferred back from the plaintiff to J. M. Withrow."

We need not set out at any length the contents of the original and amended answer and cross bill. They were much the same in substance, the amended pleading being in the main a mere amplification of the original, and the following are the admissions, denials and averments therein which we deem material on this hearing:

(a)   That the defendants admit that Withrow entered into the written contract with Porter as alleged in and filed with the bill; (b) that Porter failed and refused to comply with the terms of the contract; (c) that his failure to make the payments as provided for in the contract was without sufficient justification or excuse, but due solely to his carelessness and indifference, and in no wise to the sickness or incapacity of Withrow to receive the payments; (d) that finally on July 2, 1917, Porter having at that time defaulted in thirty-three monthly payments, not including the month of July, 1917, and having failed and refused to comply with the contract, and Withrow having become fully convinced that Porter never intended to comply with the same, Withrow had an interview with Porter at the office of Withrow's counsel in Lexington, at which interview the whole situation was gone into fully with Porter and a settlement made with him in which the whole transaction was fully explained, and

in which Porter agreed to the settlement which was then made and evidenced in part by the receipt or paper of July 2, 1917, filed with the bill; (e) that on the same day, July 2, 1917, and at the same time, there was indorsed on the back of the original contract of sale held by Withrow the following agreement, signed and acknowledged by Porter:

"Lexington, Va., July 2, 1917.

"Received of J. M. Withrow, a receipt for rent in full on house I live in on Randolph Street, to January 1, 1918, with an agreement annexed that on that date he pay me $36.00 in cash or give me a receipt in full for rent on the house to July 1, 1918.   In receiving this receipt and agreement as I have on this day done, I relinquish and fully release J. M. Withrow from any claim or liability for money paid in connection with the terms of the writing on the reverse side of this paper.

"Ben Porter.

"State of Virginia,
    "County of Rockbridge, to-wit:
    "I, John L. Campbell, a commissioner in chancery for the circuit court of the county and State aforesaid, do certify that Ben Porter, whose name is signed to the writing above, dated July 2, 1917, has, this day, acknowledged the same before me in my county and State aforesaid, the contents and purport of the writing having been fully explained to him.
    "Given under my hand this the 2nd day of July, 1917.
                                        "John L. Campbell."

The answer further denies that Porter made any substantial or permanent improvements on the property, and also denies that Porter is unable to read and write, or that he did not fully understand the nature of his agreement of

July 2, 1917, but, on the contrary, alleged that he could read and write, and that he signed the agreement last recited in his own handwriting.

It is to be especially noted that the contract indorsed on the back of the original agreement, and alleged to have been signed and acknowledged by Porter, is not in any way referred to in the bill. Its first appearance in this case is in the original answer and cross bill. In connection with the proffer of this paper the answer denies that Ben Porter could not read and write, avers that he signed the paper in his own handwriting, and that it, as well as the receipt, were fully explained to him.

The two papers taken together constitute a good defense to the bill. The original contract between the parties was clear and explicit, and was one which they could lawfully make. It was to be a sale if Porter kept up and completed all his payments, but if not, then it was to be a contract of rental at $6.00 per month. If there had been no alternative provision in the contract whereby it was to be converted into a rental contract, or even with such provision, the mere failure to promptly pay the instalments of purchase money would not have operated as a forfeiture, and under ordinary circumstances the complainant could have entitled himself to a deed by paying the balance of the principal and interest. *East* v. *Atkinson, supra.* But the receipt and contract of July 2, 1917, construed together, could only have meant that the parties recognized the termination of the sale feature of the contract and its conversion into a rental. The agreement which Porter signed and acknowledged on the last-mentioned date, says : "In receiving this receipt and agreement as I have this day done, I relinquish and fully release J. M. Withrow from any claim or liability for money paid in connection with the terms of the writing on the reverse side of this paper." This language may not have been happily chosen and might have been more explicit,

but it could hardly have meant anything other than that Porter was giving up his right to purchase the property. The only obligation which Withrow could possibly have been under to him "for money paid in connection with the terms of the writing on the reverse side" was an obligation to convey the property to Porter, and it was this obligation which Porter, by the language used there, must be held to have released.

The learned counsel for the appellee says in his brief: "The only issue raised by the bill and answer is as to whether the two writings constitute an abandonment of the contract by the appellee. If appellant relies upon these papers, as he says he does, then he must stand or fall on these papers."

In this latter statement we concur, but we are further of opinion that these papers set up a complete defense to the bill, and must prevail unless they are tainted with fraud.

It is not necessary for the appellees to claim that there had been a completed forfeiture of the contract of sale, and we do not understand them to rely thereon. The contract was in the alternative, and was to be either a sale or a lease under certain conditions therein stipulated. Whether there had been a forfeiture or not of the sale feature, complainant, according to the answer and cross bill, was inexcusably in default in his payments, and upon a settlement he and Withrow put into effect the lease feature, and did so in writing. No new consideration was required for this arrangement. It was provided for in the original contract between the parties, and was a part thereof.

It follows from what has been said that the court erred in rejecting and striking out the original and amended answers and cross bills.

The other errors need not be considered. If the plaintiff is entitled to a decree for specific performance of the contract of sale, that right must be established by setting aside

the writing which he signed and acknowledged on July 2, 1917, and this can only be done upon proof that the same was obtained by fraud.

This court will enter an order reversing the decree of the lower court in striking out the answers and cross bills, and remanding the cause for further proceedings. When it goes back, unless the complainant can show that the papers of July 2, 1917, were executed as the result of fraud on the part of Withrow, then the bill should be dismissed. If, on the other hand, such fraud be shown, then a decree should go in favor of the complainant, providing for a deed substantially upon the terms set forth in the decree of May 18, 1921.

*Reversed.*