# Richmond

## Frank L. Thomasson, Adm'r, Etc. v. John Stewart Walker, Et Al.

March 11, 1937.

Present, Campbell, C. J., and Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Caskie & Frost*, for the appellant.

*Samuel H. Williams* and *Henry M. Sackett, Jr.*, for the appellees.

SPRATLEY, J., delivered the opinion of the court.

This case had its origin in an action at law brought by the appellant to recover damages from the appellees for the alleged wrongful release of a deed of trust securing two bonds in the sum of $225 each.

The defendants in that action in order to secure the benefit of their defenses in equity, filed their bill in the suit under review, praying an injunction to stay the prosecution of the action at law until a decision by a court of equity. A

temporary injunction was granted, and the appellant, in due course, filed an answer and cross-bill, to which appellees filed their answer, and a motion under Code, section 6123, to strike out the answer. The appellees thereafter amended their bill, and the appellant again filed his answer and cross-bill. Thereupon, appellees filed their answer to the cross-bill and also a motion to strike out the answer of the appellant as being legally insufficient to constitute a defense to the amended bill. The motion was sustained, and the appellant being given leave to amend, filed an amended cross-bill No. 2. When a similar motion was made by the appellees to strike out the amended answer, the court again sustained the motion. The appellant declining to make further answer, the bill was taken for confessed, and a decree entered making the injunction perpetual.

The appellant assigns as error the action of the trial court in striking out his amended answer No. 2, and perpetually enjoining him from further prosecution of his action at law, and the procedure used by it in testing the sufficiency *in law* of the answer.

■ Testing the correctness of the ruling of the trial court in striking out said answer No. 2, we are concerned only with the facts as set out therein. So far as sufficiency *in law* is concerned, it must, under the pleading here, be admitted that the facts therein alleged are the controlling facts of the case. *Swann* v. *Atlantic Life Insurance Co.*, 156 Va. 852, 856, 159 S. E. 192, 193.

We gather the following facts from the said answer:

The appellees, Walker and Mosby, by deed of July 28, 1917, conveyed to O. L. Mason a tract of land, taking in part payment of the purchase money two bonds of Mason for $225 each, secured by a deed of trust on the land, and payable to said grantors on July 1, 1919, and July 1, 1920, respectively. Later another person purchased the same property and assumed the payment of the indebtedness. Still later, R. C. Blackford purchased the same property in his

own right, and expressly assumed the payment of the debt aforesaid.

On or about the first part of July, 1920, the maturity date of the second bond, both bonds were placed with the Peoples National Bank of Lynchburg, Virginia, for payment, after being assigned in blank, without recourse, by the owners, Walker and Mosby. R. C. Blackford, who was also the executor of the estate of Susan L. Blackford, on July 2, 1920, gave a check in the sum of $450 to the above-named bank in payment for said bonds. The check bore the notation "Purchase of Mason Bonds" and was signed by "R. C. Blackford, Ex'or. of Mrs. S. L. Blackford." Blackford, either at the time of the assignment or a short time after coming into possession of the bonds, filled in the blank assignment to himself as executor of Susan L. Blackford, and held them in the assets of that estate. Thus, Blackford, individually, was the owner of the land, subject to the lien of the deed of trust securing the payment of the two bonds for which he was personally liable, as well as executor of Susan L. Blackford's estate.

In 1928 R. C. Blackford made sale of certain of his real property including the land covered by the deed of trust, through agents selected by him, and the purchaser required from him a release of the lien evidencing said indebtedness, before making payment of the purchase money. The attorneys and agents of Blackford, in endeavoring to have the deed of trust released, inquired of the appellees whether the bonds had been paid or not, and were advised by the appellees that they had been paid.

An affidavit pursuant to the Virginia statute was then prepared by and presented by Blackford's attorney and agent to the appellees, and by them executed. Thereupon Franklin Daniel, an attorney in the office of Blackford's counsel, was by them authorized to mark the lien "Satisfied and Released" on the margin of the deed book where recorded. The sale of the land was then consummated, and the purchase

money was paid to the agent of Blackford. It was averred that Blackford, because of his illness, had neither the opportunity nor the ability to ascertain the status of the bonds. No question is raised, however, that he did not have the legal or mental ability to execute a deed for the conveyance of his lands for which he received $13,500.

After the death of R. C. Blackford, the appellant, Thomasson, qualified as administrator *d. b. n. c. t. a.* on the estate of Mrs. Blackford, and found among the assets the two bonds not marked paid or cancelled. The answer charges no intentional fraud or wrongdoing on the part of Blackford or of the appellees, nor that appellees received any consideration or benefit from the release. It contends that the bonds belonged to the estate of Mrs. Blackford, and that they are still not cancelled and unpaid; that her estate is not chargeable with any of the actions of R. C. Blackford as an individual in connection with the release; that through a mistake of actual facts the appellees wrongfully made affidavit of payment and authorized the said Daniel to act as their attorney to release the deed of trust; that the property conveyed in the aforesaid deed of trust is now, and was at the time of the release, of sufficient value to enable appellant to realize the full amount of the bonds, if the release had not been made; and that appellees are liable to the estate of Mrs. Blackford for the damages incurred by such unlawful release.

The amended bill alleges the insolvency of Blackford, and the petition for appeal herein admits that Blackford would be the beneficiary of one-half of the amount sought to be recovered in the action at law, as one of the devisees or legatees of Susan L. Blackford. Since these facts are not contained in the answer, however, we cannot consider them in our ruling on the question before us.

The appellees, in their motion to strike, rely principally upon two grounds: First, that in effect the bonds had been paid to R. C. Blackford, who was the holder of the bonds belonging to the estate, as well as the owner of the land,

when he collected the purchase price of the land as above set out; that such payment operated to cancel and extinguish the notes; and that, therefore, there had been such an administration of the bonds as assets of the estate 'by Blackford that title did not pass to the succeeding administrator, Thomasson; Second, that the estate of Susan L. Blackford, the real party in interest, was so bound by the acts of R. C. Blackford while executor thereon, that the succeeding administrator of that estate is estopped because of those acts from collecting payment of these bonds from appellees.

Considering then the facts as set out in appellant's answer No. 2, as the controlling facts in the case, on the motion to strike out, we are confronted with the questions: Are such facts sufficient as a matter of law to constitute a defense against the bill? Were the conduct and actions of R. C. Blackford and his agents such as to be binding upon the estate of Mrs. Blackford?

Appellant contends that, in the execution of the release of the lien of the deed of trust, appellees acted without any authority or representation from Blackford as executor; that they knew or ought to have known, that the bonds were owned by the estate of Mrs. Blackford, and should not have released them without specific authority from Blackford as the personal representative of the estate; and that neither Blackford nor his agents were, at any time, acting for the estate. In support of this contention, he cites 21 Corpus Juris, p. 1184: "* * * Yet it is a rule of general application that an act done in a representative capacity will not estop one in his individual capacity and *vice versa*."

We subscribe to the above general principle. But does it apply where the acts of one, who has a dual capacity, are so closely connected and associated that it is impossible to distinguish his action in one capacity from another? We do not think that the general principle was intended to be that broad. The peculiar equities of each case must control the application of the doctrine. Here Blackford was interested in two capacities, individual and representative,

and could act in either. An honest performance of his duty required specific acts in each capacity. There are no *indicia* by which we can distinguish and separate his actions as between his capacities.

The application of the principle is, so far as we know, a novel one in Virginia. The closest case cited in point is that of *Yokum* v. *Yokum*, 110 W. Va. 221, 157 S. E. 579, 581. There the executor of an estate, who was also a secured creditor thereof, negotiated a loan to the estate by misrepresenting its liabilities and the proposed application of the proceeds of the loan. Upon the later insolvency of that estate, the executor denied that the representations made as executor would estop him individually from asserting his secured claim against the estate, citing the general rule in Corpus Juris. The court, however, held:

"We are aware that such high authority as Corpus Juris states: 'It is a rule of general application that an act done in a representative capacity will not estop one in his individual capacity.' 21 C. J., p. 1184, sec. 187. The cases cited in support of the text do not contain the element of misrepresentation or of misconduct, and do not make or warrant so broad a statement. This text is not consistent with that on pages 1181, 1182, *supra*, that 'Estoppels *in pais* are available * * * against any person responsible for a statement or representation.' Neither is it consistent with the admitted weight of authority that a deed made with general covenants by a representative estops him individually. Page 1104, *supra*. Had the executors applied the loan as they proposed to the bank they would do, the bank would now be subrogated to secured claims amounting to $11,000 as of September, 1925. It is not equitable under the circumstances that Hattie M. and H. Baker Yokum should prosper as individuals, while the bank should lose through their executorial misdeeds. We therefore hold that they be estopped to receive anything on their claims either for themselves or for their personal and unsubro-

gated creditors until the bank is paid all of its unsecured balance * * *."

██ Blackford, as an individual, knew or was charged with knowing whether the bonds had been paid or not. He likewise knew that he was not entitled to a release of the lien unless the bonds were paid. Necessarily the inquiries and endeavors made by him or his agents to secure a release carried an implied representation that he was entitled to such release. His agents set in motion the steps to secure the release, if, in fact, they did not actually induce the execution thereof. He was responsible for the acts of these agents in the same degree as if he were acting himself. As one person, he was so intimately bound up in the whole transaction that it was impossible for him to have kept his left hand from knowing what his right hand was doing. He was a representative of the estate, chosen by the testatrix, and in a position to fully perform the duties and obligations connected therewith. Whether or not he represented the estate fairly and honestly, so far as others are concerned, the estate is bound by his acts and the acts of his authorized agents.

██ ██ It is admitted that appellees were innocent persons in this transaction, brought into this case only to clear up a situation first suggested by Blackford's agents. But for the actions of Blackford in this matter, in which both as an individual and as executor he was concerned, and of which matter he had full knowledge and in which he could alone have performed certain duties, no one would have suffered a loss. Thomasson, as the successor administrator, had no greater rights than his predecessor had, and is bound by such acts as bound Blackford. It would not only be a violation of good faith, but a gross injustice to permit the administrator, Thomasson, under these circumstances, to deny and repudiate the actions chargeable against Blackford. It is generally agreed that when one of two innocent persons, each of whom is guiltless of an intentional moral

wrong, must suffer a loss, it should be borne by that one of them who by his conduct has rendered the injury possible. 10 R. C. L. 695.

In *Moyers Coal Corporation* v. *Whited*, 157 Va. 302, 160 S. E. 43, 46, this court adopted the rule of equitable estoppel as laid down in 4 Amer. & Eng. Decs. in Eq. 258, and followed in *Chesapeake & Ohio R. Co.* v. *Walker*, 100 Va. 69, 40 S. E. 633, 914:

"The general rule of equitable estoppel, or, as it is frequently called, estoppel *in pais*, is that when a person, by his statements, conduct, action, behavior, concealment, or even silence, has induced another, who has a right to rely upon those statements, etc., and who does rely upon them in good faith, to believe in the existence of the state of facts with which they are compatible, and act upon that belief, the former will not be allowed to assert, as against the latter, the existence of a different state of facts from that indicated by his statements or conduct, if the latter has so far changed his position that he would be injured thereby."

We conclude that the appellant is estopped from claiming damages resulting from the performance of the acts charged against the appellees.

The appellant further contends that an improper procedure was used in testing the sufficiency *in law* of the answer. He insists that the test should have been made by a hearing on bill and answer only, and not on a motion to strike out under Code, section 6123.

Section 6123, as it now reads, first appeared in the Code of 1919:

"Exceptions to answers for insufficiency are abolished. The test of sufficiency shall be made by a motion to strike out; if found insufficient, but amendable, the court may allow amendment on terms. If a second answer is adjudged insufficient the defendant may be examined on interrogatories, and committed until he answer them, or, on motion of the plaintiff, the court may strike out the answer and take the bill for confessed."

Prior to the revision of the Code in 1919, the statute provided for exceptions to an answer. Some authorities held that exceptions were only proper when the answer was evasive, non-responsive, or otherwise defective in form. However, it appears to have been the practice in Virginia, that where a plaintiff excepted to an answer for insufficiency, he planted himself upon a proposition that, if the averments of the answer are sustained by proof, they constitute no defense to the plaintiff's demand. *Kelly* v. *Hamblen* (1900), 98 Va. 383, 36 S. E. 491; *Keys, etc., Co.* v. *Kirkbridge* (1912), 114 Va. 58, 75 S. E. 778; *Norfolk* v. *Water Co.* (1912), 113 Va. 303, 74 S. E. 226; Barton's Chancery Practice (3rd Ed.), p. 384.

The first two sentences of the present section are adopted substantially from Federal Equity Rule 33 (28 U. S. C. A. following section 723), and substitute the motion to strike out for the practice theretofore followed. The late Professor William Minor Lile in his book on Equity Pleading and Practice (2nd Ed.), p. 121, criticizes the language of the present statute and discusses the function of exceptions. He states that the language of the statute is ambiguous. That it might have been intended that the motion to strike out should only perform the narrow function of an exception, especially since Code, section 6128, preserves the test of sufficiency *in law* in the hearing on bill and answer only. However, in a footnote to this section, on page 122, in comparing section 6128 with Federal Equity Rule 33, he comes to the following conclusion:

"The Code amendment, on the other hand, seems meant to substitute the motion to strike out for every form of insufficiency of answer—whether for insufficiency in law as a defense or whether insufficient in not properly responding to the charges, or the interrogatories of the bill."

After the amendment of 1919, we find this section referred to without criticism in *Withrow's Ex'x* v. *Porter* (1921), 131 Va. 623, 109 S. E. 441; *Stinson* v. *Board of Supervisors of Buchanan County* (1929), 153 Va. 362, 371, 149 S. E. 531.

In *Swann* v. *Atlantic Life Insurance Co., supra,* decided in 1931, Justice Gregory, in passing upon the ruling of a trial court on a motion to strike out a replication, said: "For the purpose of testing the correctness of its (trial court's) ruling in striking out the plaintiff's replication, it must be admitted that the facts set up in said replication are true. * * * Are they (the facts) sufficient as a matter of law to constitute a cause of action against the defendant?"

In view of the different opinions as to the function of an exception, it may well be that the substitution therefor of the motion to strike out was intended to make the pleading more inclusive and broader. It is a recognition that the hearing on bill and answer is a perilous proceeding. There the plaintiff must be sure that the admissions in the answer are sufficient to establish the material allegations of his bill. If the motion to strike out, however, is overruled he still has had a test of the sufficiency *in law* of the answer and is not precluded from further hearing. There is no conflict between section 6123 and section 6128, the privilege and manner of testing the answer simply being enlarged. Both sections are available to a litigant. He may exercise his choice, and unless he is willing to stake his whole case upon a hearing on bill and answer only, he may avail himself of the motion to strike, and thereby secure a judicial expression which may guide him in further proceeding. The language of the amendment to section 6123 has enlarged the function of exceptions to answers, and covers every form of insufficiency of answer,—whether nonresponsive to the allegations of the bill, evasive, or insufficient as a matter of law.

In a written opinion, the trial court tested the answer in accordance with these principles and found it insufficient in law. We agree with that conclusion. The decree of the trial court is affirmed.

*Affirmed.*