[Civ. No. 12828. First Dist., Div. Two. June 12, 1945.]

PHIL C. KATZ, as Administrator with the Will Annexed, etc., Respondent, v. A. J. RUHLMAN & COMPANY, INC. (a Corporation), Appellant.

Albert D. Elledge for Appellant.

Henry F. Boyen and Frank J. Fontes for Respondent.

NOURSE, P. J.—Plaintiff, as administrator with the will annexed, sued to recover upon a promissory note delivered by defendant to the decedent. The defendant answered alleging it had an offset against the note in money due from decedent which plaintiff was estopped to deny because of certain acts of the former executor of the estate. The trial court rejected the defense and gave judgment for the full amount of the note with interest.

In its appeal from the judgment defendant attacks the findings of fact as not supported by the evidence and argues that

the executor waived the statutory requirement that a verified claim be filed, agreed upon a compromise of both claims, and is estopped from repudiating this agreement.

These facts are undisputed. Josephine Wester and A. J. Ruhlman were coowners of the defendant corporation. In August, 1939, the corporation executed and delivered its promissory note in the sum of $2,500 to Mrs. Wester. In September, 1939, Mrs. Wester died. In the same month A. J. Ruhlman delivered the note to the executor, Monte A. Dernham. Thereafter conversations were had between Ruhlman and the executor through which it was agreed that the balance of $2,037.07 claimed by the corporation to be due from the decedent should be accepted as a partial offset to the promissory note, that no claim need be filed against the estate, and that the latter would assert as the sum due the estate the balance between the two conflicting claims, which was fixed at $462.93, and interest would be waived. Mr. Dernham was an attorney at law and for several years had been the legal adviser and attorney for Mr. Ruhlman. Acting upon the agreement of these parties the executor filed an inventory in April, 1942, and an inventory and appraisement in January, 1943. The first did not refer to the promissory note, the second stated the sum due on the note to be $262.93. (An obvious clerical error. Should be $462.93.) The corporation, also acting upon the agreement of the parties, and relying upon the legal advice of the executor, failed to file a claim against the estate. After the statutory time for filing had passed, the administrator, who had been substituted for the executor, repudiated the compromise and sued for the full amount of the note.

The trial court found "That it is not true that Monte A. Dernham, as Executor of the Last Will and Testament of said decedent, cancelled any part of the principal or interest due upon said promissory note, or entered into any alleged agreement concerning the amount due for principal and interest on said promissory note, or consented to offset the obligation of said promissory note against any alleged claim of said corporation against Josephine Wester, and that it is not true that the defendant corporation failed to file a creditor's claim against the estate of said decedent by reason of any act or conduct upon the part of the personal representative of the estate of said decedent." This finding is not sup-

ported by any evidence direct or circumstantial, or by any inference or presumption. All the evidence is directly contrary to the finding. But two witnesses were called, Mr. Ruhlman and Mr. Dernham. The first testified: ''Q. Was there anything else at that time relative to the note and any possible offsets? A. He and I discussed that, yes, about the note and also the offset amount. I will say again, he stated, he said, 'We will let that go until we settle the estate,' he said, 'and then you can pay off the difference,' which was four hundred and sixty odd dollars; that was the end of that conversation. Q. Was there anything said about filing a claim against the estate of Josephine Wester? A. I asked Mr. Dernham, 'Should I file a claim?' He said, 'Oh, it won't be necessary. We will straighten this thing out. You don't have to do that.' ''

Mr. Dernham testified on behalf of respondent as follows: ''Q. Have you told us the conversation that took place at the second meeting? A. Yes, just as Mr. Ruhlman testified. His testimony was substantially truthful, I think, to the effect that he called my attention to the fact that there were certain counter-claims against that note. Q. Tell us what was said on the subject of counter-claims if anything. A. I think Mr. Ruhlman's testimony as on that point was substantially correct, and I was—— it impressed me as honest, and I am willing to repeat that with certain qualifications. Q. That is what I am trying to get from you, the conversation. A. (Continuing) However, I will answer counsel's question. Q. The court will judge of your credibility. I want you to tell us those variations, if any, if you will give them to us please. A. The only variations I noticed, as Mr. Ruhlman testified, was this: That to the best of my recollection I did not make the unqualified and absolute statement to Mr. Ruhlman that, 'This will be allowed when the estate is settled.' It was merely a casual remark that whatever will happen to it, or whatever the account was, it will be taken care of and properly set off. It was a casual statement, but intended as an agreement for a committal.'' The witness was further interrogated by counsel for respondent in an effort to disprove the previous testimony that he had advised Mr. Ruhlman that it was unnecessary to file a claim against the estate. His most lucid answer was that Mr. Ruhlman's testimony may have been correct, that he had no distinct recollection of having advised him that

"he was not required" to file a claim, "but I may have told him something to that effect." The respondent is bound by this testimony of his own witness. In view of all this evidence no inference or presumption can save the finding under attack.

Several interesting points of law are argued in the briefs which we do not find necessary to discuss because the case is controlled by the answer to this simple question—when an executor or administrator of an estate in probate has agreed to a compromise of an existing claim and has fraudulently or mistakenly advised a creditor that he need not file a claim against the estate may the estate repudiate the act of its representative and seek profit through the fraud or mistake of its own agent? (We do not imply that there is any suggestion of fraud on the part of the executor in this case, but, on the issue of estoppel, the authorities treat fraud and mistake in the same category.) An answer to the question does not find any case law directly in point. *National Grocery Co.* v. *Kotzebue Fur & Trading Co.,* 3 Wn.2d 288 [100 P.2d 408]; *Franklin Fire Ins. Co.* v. *Holmes,* 188 Ark. 1053 [69 S.W.2d 281]; and *Thomasson* v. *Walker,* 168 Va. 247 [190 S.E. 309, 110 A.L.R. 593], hold that the doctrine of estoppel applies to an administrator. In *Farrell* v. *County of Placer,* 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323], it was held that a county which had waived the filing of a claim for damages within the statutory period was estopped from attacking the claim as filed too late. There the county raised the plea of the statute in defense of a claim against it. Here the respondent raises it in seeking affirmative relief through the fraud practiced upon the claimant. There is sounder reason why the doctrine of waiver and estoppel should apply here than in the Farrell case because here the representations were made to appellant by one who had been a legal adviser and were accepted and relied on as professional advice upon matters of legal procedure.

The respondent argues that the "counter claim" was improperly pleaded, and that its several items were not proved. It was not necessary to either plead or prove a counterclaim. Appellant's defense to the action was that the parties compromised and agreed that appellant's debt to the estate was $462.93 and no more. All the testimony relating to the status of Mr. Ruhlman's account with the corporation was outside the issues and should not have been admitted. Whether

the compromise was valid as between the executor and the estate is not involved in this proceeding. That he had power to compromise with the approval of the probate court is not questioned. (Prob. Code, § 718.5; *Estate of Lucas,* 23 Cal. 2d 454 [144 P.2d 340].) In the latter case it was said that the statutes requiring court approval ''neither enlarge nor abrogate the common-law power of the executors and administrators to enter into a compromise or settlement, but merely afford them additional protection from liability.''

██ Here the undisputed evidence is that such a compromise and settlement was made. The respondent had no right to repudiate that settlement after the time to file a claim had expired. ██ He was entitled to recover from appellant the sum of $462.93 and this was conceded at the time of and prior to the trial. Any interest accumulating on this amount is due to respondent's fault and should not be charged to appellant.

The judgment is reversed with costs to appellant.

Goodell, J., and Dooling, J. pro tem., concurred.

A petition for a rehearing was denied July 12, 1945, and respondent's petition for a hearing by the Supreme Court was denied August 9, 1945.