**In re ROYAL MEADOWS STABLES, INC., Debtor.**

**Bankruptcy No. 93–23637–B.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Oct. 11, 1995.

**517**

Dean W. Sword, Jr., Portsmouth, Virginia, for debtor in possession.

James R. Sheeran, Portsmouth, Virginia, for Lloyd C. March, Jr. and June O. March.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This matter is before the court on the debtor in possession's objection to the $100,991.25 secured claim filed by Colonial Farm Credit, ACA ("Colonial Farm Credit"). The claim has been assigned to Lloyd C. March, Jr. ("March") and his wife, June O. March (collectively, "the Marches").[1] The issue is whether a mistaken quotation of the payoff amount, and the acceptance of that amount by the noteholder, has discharged the debt. For the reasons discussed, the court concludes that the indebtedness was not discharged, and that claim should be allowed as filed, reduced by a $5,108.14 post-petition credit.

### Findings of Fact

The parties have stipulated to the relevant facts and documents. The debtor purchased a 166 acre tract in Suffolk, Virginia, from March on July 16, 1991, and gave back two promissory notes, one for $350,000.00 and one for $100,000.00, secured by first and second deeds of trust, respectively, against the real estate.[2] March in turn pledged both notes to Colonial Farm Credit to secure his

own $350,000.00 note to Colonial Farm Credit. In connection with the pledge, March endorsed the two notes to the order of Colonial Farm Credit and executed assignments of the two deeds of trust. The assignments were recorded in the land records. The endorsements and assignments were absolute on their face and did not include any restrictive language indicating that the transfer was for purposes of security only.

With March's consent, Colonial Farm Credit collected the payments on the two notes and applied them to March's own note. After the debtor filed its chapter 11 petition in this court on July 15, 1993, Colonial Farm Credit filed proofs of claim on or about August 24, 1993, with respect to the two notes.[3] Additionally, on or about November 1, 1993, Colonial Farm Credit filed a motion for relief from the automatic stay in which it alleged it was the "holder" of a claim against the debtor "evidenced" by the notes.[4] After this court entered an order granting relief from the automatic stay effective December 31, 1993, Colonial Farm Credit advertised the property for foreclosure.

The debtor had previously obtained an offer from Warren L. Birdsong dated August 25, 1993, to purchase 146 acres of the property for $400,000.00. The sale was approved by this court on November 16, 1993, without objection from Colonial Farm Credit and went to settlement on January 20, 1994. The motion to approve the sale did not seek, and the order did not provide for, a sale free and clear of liens under § 363(f),[5] even though the "Land Purchase Agreement" between the debtor and Birdsong stated that the purchase offer was "[s]ubject to removal of liens by Bankruptcy Court, if necessary to convey clear title." The settlement attorney, Jesse J. Johnson, Jr., telephoned Colonial Farm

1. The Marches are themselves debtors in possession in their own chapter 11 case.

2. There was also an unsecured note for $40,000.00 which is not at issue here.

3. One proof of claim, in the amount of $359,487.35, included as attachments copies of *both* the $350,000.00 and the $100,000.00 promissory note and copies of both deeds of trust. The other proof of claim, which was in the amount of

$100,991.25, had attached a copy of the $100,000.00 note and the deed of trust securing it.

4. The balance due on the two notes was alleged in the motion to be in the "approximate amount of $450,000.00."

5. The order simply provided, "WHEREFORE the Court does approve the application and grant the debtor in possession the authority to sell and convey the aforesaid property."

Credit and requested payoff figures for the two notes. Colonial Farm Credit advised Johnson that the payoff amount was $394,-813.24. This figure, however, was not the amount due on the two notes made by the debtor[6] but rather the amount due on March's note to Colonial Farm Credit. The settlement attorney delivered a check for $394,813.24 to Colonial Farm Credit, which then marked March's note as paid in full and endorsed back over to him the two notes made by the debtor. Neither note has been marked "paid" and neither deed of trust has been released.

### Conclusions of Law

This court has jurisdiction of this controversy under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference entered by the United States District Court for the Eastern District of Virginia on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

■ There is no dispute between the parties as to the amounts actually owed on the two promissory notes on the morning of settlement. As noted above, that amount is stipulated to have been $499,896.06. The Marches concede that the $394,813.24 paid at settlement was sufficient to pay off the first deed of trust in full, but they vigorously dispute that it also paid the second deed of trust. The issue before the court, therefore, is whether the misstatement of the payoff amount by Colonial Farm Credit to the settlement attorney, and the delivery to Colonial Farm Credit of funds in that amount, operated as a full discharge of the indebtedness.

■ No reported Virginia case has been cited to the court deciding whether a noteholder is barred by a mistaken quotation of a

payoff amount from thereafter enforcing the note according to its terms. Since Virginia law does permit a person who, under a mistake of fact, pays *more* than is due on a debt to bring an action to recover the overpayment,[7] it seems likely that a Virginia court confronted with the issue would hold that a noteholder who by inadvertence or under a mistake of fact accepted less than was actually due would similarly be able to bring an action for the difference. Any such action, however, would necessarily be subject to the doctrine of equitable estoppel as recognized in Virginia. As explained by the then-Supreme Court of Appeals of Virginia in *Thomasson, Adm'r v. Walker*, 168 Va. 247, 256, 190 S.E. 309, 312–313 (1937),

> The general rule of equitable estoppel, or, as it is frequently called, estoppel in pais, is that when a person, by his statements, conduct, action, behavior, concealment, or even silence, has induced another, who has a right to rely upon those statements, etc., and who does rely upon them in good faith, to believe in the existence of the state of facts with which they are compatible, and act upon that belief, the former will not be allowed to assert, as against the latter, the existence of a different state of facts from that indicated by his statements or conduct, if the latter has so far changed his position that he would be injured thereby.

As explained in *Thomasson*, equitable estoppel flows from the principle "that when one of two innocent persons, each of whom is guiltless of an intentional moral wrong, must suffer a loss, it should be borne by that one of them who by his conduct has rendered the injury possible." *Id.*

In this connection, it is worth emphasizing what the present litigation is *not* about. This

---

6. The stipulated amount (principal and interest) owed on the first trust note was $389,705.18. The amount owed on the second trust note was $110,190.88.

7. See, e.g., *Hughes v. Foley*, 203 Va. 904, 906, 128 S.E.2d 261, 262 (1962) (Payment made under a mistake of fact is recoverable "where the person to whom the payment is made is not entitled thereto and cannot in good conscience retain it." In such a case, "the right of recovery is based upon the promise to return the money which the law implies, irrespective of any actual

promise, and even against the refusal to make it, whenever the circumstances are such that in equity and good conscience the money should be paid back"). To the same effect is *Va. Ins. Rating Bureau v. Commonwealth ex rel. State Farm Mutual Automobile Ins. Co.*, 186 Va. 270, 42 S.E.2d 419 (1947) (Although payment made under mistake of law is ordinarily not recoverable, payment made by inadvertence is recoverable where person to whom it is made is not entitled thereto and has not altered its position as a result of the payment).

matter is before the court on the debtor's objection to the Colonial Farm Credit proof of claim, now assigned to the Marches. It is not before the court on an action by Birdsong to quiet title to the 146 acres he purchased from the debtor in possession. The distinction is crucial, because the facts that would operate as an estoppel in favor of Birdsong simply do not apply to the debtor.

Viewed from the prospective of the purchaser, Colonial Farm Credit was either the owner of the two notes [8] or at the very least the authorized agent of March with apparent authority to quote a payoff figure for the notes. Regardless of whether it was the owner of the note or only an agent, Birdsong had the right to rely on the payoff figure provided by Colonial Farm Credit. No reason is suggested why such reliance would not have been reasonable, and it is inconceivable that Colonial Farm Credit would not have expected Birdsong to rely on the payoff figures in going through with settlement. Furthermore, based on Colonial Farm Credit's representation as to the amount needed to pay off the notes, Birdsong changed his position to his detriment by paying the purchase price (almost all of which went to Colonial Farm Credit) and taking title to the property. Thus all the elements for equitable estoppel are present.

■ The situation with respect to the debtor, however, is very different. Prior to the date of the Birdsong contract, Colonial Farm Credit had filed proofs of claim in the debtor's case setting forth the balances due on the two notes. Those balances, in the aggregate, substantially exceeded the purchase price at which the debtor negotiated to sell the 146 acres to Birdsong. The debtor, as debtor in possession, must be charged with at least constructive knowledge of the proofs of claim filed in its own case. It is true, as noted above, that Colonial Farm Credit may well have sowed confusion by attaching as exhibits to its $359,487.35 proof of claim copies of both the $300,000.00 *and* the $100,000.00 notes and both deeds of trust. Standing alone, that proof of claim could

logically be read as a representation that $359,487.35 (plus allowable post-petition interest) would pay off both notes in full. However, the $359,487.35 proof of claim did not stand alone. Colonial Farm Credit also filed a separate proof of claim with respect to the $100,000.00 deed of trust, and the debtor in possession could not simply ignore the fact, at the time it sought approval of the Birdsong contract, that there were before the court two proofs of claim by Colonial Farm Credit totalling $460,478.60.

Moreover, the balance due on the two notes was not the type of information that in the nature of things would have been within the exclusive knowledge of Colonial Farm Credit. The debtor was the maker of both notes and was certainly aware of their relevant terms. Each note was for a fixed rate of interest, with payments being applied first to accrued interest, then to reduction of principal. Since there is no indication that any party other than the debtor was making payments on the notes, and since the debtor presumably knew what payments it had made, the debtor was in as good a position as Colonial Farm Credit to calculate how much was due on the notes.

Additionally, approximately a week prior to tendering the sketch order approving the sale of the 146 acres to Birdsong, the debtor had been served with Colonial Farm Credit's motion for relief from the automatic stay. The motion alleged an aggregate balance due on the two notes well in excess of the purchase price to Birdsong, and the debtor in possession therefore could not reasonably have believed, when it went to settlement approximately 10 weeks later, that the purchase price would fully satisfy the two notes. Colonial Farm Credit's erroneous quotation of the payoff amount to the closing attorney occurred *after* the contract had been signed and *after* the court order had been entered approving the sale. As both a legal and a factual matter, therefore, the debtor in possession could not have relied on the mistaken figures furnished by Colonial Farm Credit in entering into the contract with Birdsong nor

---

**8.** The Marches concede that Colonial Farm Credit was the "holder" of the note at the time the

payment was made.

could it have changed its position to its detriment as a result of such reliance.

It may be argued that, had the debtor learned at the settlement table that another $105,082.82 was needed to pay off the two deeds of trust in full, it could have returned to this court and sought, under § 363(f) of the Bankruptcy Code, an order allowing the sale of the 146 acres free and clear of liens. But even assuming the debtor had successfully done so, the result would have been at most an order releasing Colonial Farm Credit's lien from the 146 acres being sold and transferring the lien to the proceeds of sale. To the extent the note was not satisfied, however, the lien would have remained on the 20 acres retained by the debtor.

The debtor in possession cites to two reported Virginia decisions in support of its position. Neither opinion, however, addresses the issue currently before the court. In *Hall Building Corp. v. Edwards,* 142 Va. 209, 128 S.E. 521 (1925), a sufficient sum of money (from insurance proceeds of a building destroyed by fire) had been placed in the noteholder's hands to pay the deed of trust in full. At the request of the maker, however, the creditor paid part of the funds back to reimburse the costs of constructing a replacement structure on the property and credited the note for the difference. The issue presented was whether the tendering and acceptance of funds in the full amount due on the note effected a release of the deed of trust. The decision simply held that whether the acceptance of the funds constituted payment of the debt turned on the intent of the parties, and that since the evidence did not show a mutual intent that the payment was received in full satisfaction of the debt, the debt was not discharged.

In *American Security & Tr. Co. v. John J. Juliano, Inc.,* 203 Va. 827, 127 S.E.2d 348 (1962), the maker of a deed of trust note had delivered payoff funds to the payee not knowing that payee had assigned the note and deed of trust to another party as collateral. (The original payee, in response to an inquiry from the settlement attorney, implied that it had the original note and would deliver it for cancellation.) The court in that case held that where payment of a note is made to a party who does not have the note in hand, the maker takes the risk that such party does not have authority to accept payment on behalf of the noteholder. Since there was no evidence that the noteholder had held out the original payee as its agent for collection of the note, payment to the original payee was ineffective to discharge the indebtedness, and the assignee was entitled to foreclose under the deed of trust. As in *Hall,* there was no issue of a factual mistake as to the payoff amount.

In short, whatever equities may operate in favor of a party who changes his position in reasonable reliance on a mistaken payoff quotation, they do not apply to the debtor in possession in this case, who was placed on notice, and should reasonably have been aware, that the sales price was insufficient to satisfy both notes. The debtor is, of course, entitled to have the two notes credited with the amount paid to Colonial Farm Credit. The Marches do not dispute that the $394,813.24 paid to Colonial Farm Credit was sufficient to pay off the $300,000.00 first trust note in full. The debtor in possession is therefore entitled to have that note marked as paid. The debtor in possession is also entitled to have the $5,108.14 remaining after payment of the first deed of trust applied to the $100,000.00 second trust note. The terms of the note provide that payments received are to be applied first to accrued interest, then to principal. The amount due on the $100,000.00 note on January 20, 1994, when the payment was tendered, was $97,412.35 of principal plus interest of $12,778.53. Of the interest due, at least $4,563.70 had accrued post-petition. Under § 506(b), Bankruptcy Code, post-petition interest is allowable "[t]o the extent that an allowed secured claim is secured by property the value of which … is greater than the amount of such claim…." There is no assertion by the debtor in possession that the value of the 166 acres was less than the principal and accrued interest as of January 20, 1994 on the two notes. Thus, application of the $5,108.14 payment reduces the accrued interest by that amount but does not affect the principal balance of the note, which remains at $97,412.35. Whether additional in-

terest properly accrues depends on the value of the collateral. Since that issue is not currently before the court, the court makes no ruling.

Accordingly, a separate order will be entered (1) disallowing the $359,487.38 claim in full as having been paid post-petition,[9] and (2) allowing the $100,991.25 claim in the amount claimed, reduced by the $5,108.14 post-petition credit against accrued interest. The allowance of the claim is without prejudice to the right of the debtor in possession to bring a motion under § 506(a) of the Bankruptcy Code to value the debtor's collateral.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law under Fed.R.Bankr.P. 7052.

9. Although the objection before the court specifically addresses only the $100,991.25 claim, the claims are inextricably intertwined and the court, in reaching a decision as to the amount due on the $100,000.00 note, is necessarily required to determine the status of the $350,000.00 note. Accordingly, since all necessary parties are before the court and the court has the benefit of all evidence relevant to both notes, the court, in order to provide complete relief and avoid a multiplicity of proceedings, will enter an order with respect to both proofs of claim.