Preston L. SPRUANCE and
Susan C. Spruance

v.

DIRECTOR OF REVENUE.

Preston Lea SPRUANCE

v.

DIRECTOR OF REVENUE.

Preston L. and Margaret H. SPRUANCE
TRUST, Preston L. Spruance, Trustee

v.

DIRECTOR OF REVENUE.

Preston Lea SPRUANCE

v.

DIRECTOR OF REVENUE.

Preston Lea SPRUANCE, an individual,
et al.

v.

Theodore F. SANDSTROM, Esquire, et al.

Superior Court of Delaware,
New Castle.

April 27, 1971.

David C. Moore, Wilmington, for appellants and petitioner.

Edward J. Wilson, Wilmington, for State Tax Board.

## OPINION IN FOUR APPEALS FROM THE STATE TAX BOARD AND ONE MANDAMUS PETITION

QUILLEN, Judge.

### 1. THE APPEAL CASES

There are four cases here on appeal. All of them involve on the merits the taxability of payments made by Preston Lea Spruance (sometimes herein referred to as Lea) to his former wife, Margaret Spruance (sometimes herein referred to as Margaret) pursuant to a 1955 separation agreement establishing a trust. Some of the cases involve procedural points as well so it is important to note at the outset the precise taxable years involved in each of the cases and to note the general nature of the proceedings to date.

*5155 Civil Action 1970 (Docket 332 Below)*: This is an appeal denying Lea's application for a refund for taxes overpaid in 1959 and 1960.

*5156 Civil Action 1970 (Docket 367 Below)*: This is an appeal from an order denying Lea's petition for a redetermination of state income tax deficiencies assessed for 1962, 1963, 1964 and 1965.

*5157 Civil Action 1970 (Docket 368 Below)*: This is an appeal from an order denying Lea's petition as trustee for a redetermination of a state income tax deficiency assessed for 1966.

*5220 Civil Action 1970 (Docket 398 Below)*: This is an appeal from an order denying Lea's petition for a redetermination of a state income tax deficiency assessed for 1966.

### 2. THE QUESTION OF TIMELY APPEAL ON THE REFUND CLAIM

#### 5155 Civil Action 1970

■ In this case, timely claims for refunds for 1959 and 1960 were filed in 1963 and 1964. No action was taken by the Tax

Commissioner within 60 days of the refund claims. The claims were subsequently rejected. No appeal to the State Tax Board was filed until June 21, 1967.

The State Tax Board denied the appeal because it was untimely under 30 Del.C. § 1182(c) and § 1181(b). These two sections read as follows:

§ 1182(c): "If the Tax Commissioner fails to act upon or rejects any claim for abatement or refund of taxes alleged to have been illegally or erroneously assessed or paid, within 60 days from the filing of such claim, the taxable shall have and possess rights of appeal to the Tax Board and as provided in subsection (b) of section 1181 of this title and section 328 of this title."

§ 1181(b): "If the Tax Department discovers from the examination of the return or otherwise that tax on the income of any taxable, or any portion thereof, has not been assessed, it may, at any time within three years after the time when the return was due, or if not filed on the due date within three years from the date the return was filed, assess the tax on the same and give notice to the taxable of such assessment and at the termination of 30 days, the additional tax determined by the Tax Department shall be due and payable unless the taxable or his agent or attorney shall have within said 30 days, filed complaint or appeal in writing over his signature from the assessment of the Tax Commissioner and requested a hearing before the Tax Board. The limitation of three years to the assessment of such tax shall not apply to the assessment of additional taxes upon returns which are fraudulent or the income thereon grossly understated or in cases where no return has been filed. As amended 49 Del. Laws, Ch. 64, § 1."

The appellant argues that "it is a paradox to appeal from a failure to act" and "the statutes, which are ambiguous on their face, are a trap for the unwary."

It is indeed unusual to require an appeal from a failure to act and such a require-ment can work a hardship. But the statute is not ambiguous. Failure to act within 60 days is made the equivalent of a rejection. The purpose is to speed litigation and prevent the time delays apparent in this case. Under the statutes, the burden was on the appellant to appeal between 60 and 90 days after the claim was filed, the Commissioner having taken no action within 60 days.

The decision of the State Tax Board in 5155 Civil Action 1970 will be affirmed.

## 3. THE STATE TAX BOARD'S DECISION BASED ON THE STIPULATION BELOW

### 5156 and 5157 Civil Actions 1970

In these two cases, counsel below stipulated that they could "be disposed of on whatever decisions are rendered in the companion cases for other years now pending before the State Tax Board."

The order of June 10, 1970 dismissed the petition pursuant to the stipulation based on the decision in 332 (5155 Civil Action 1970 on appeal). This was clearly erroneous. Assuming 332 was one of the companion cases referred to in the stipulation, the decision in that case was based on a procedural matter, timeliness of appeal on a refund application, not even in issue in these two cases. It should be perfectly obvious that the stipulation must be based on the assumption that the merits of these two cases would be resolved in the companion case. The basis for the decision of the State Tax Board in these two cases is wholly without merit. It will thus be necessary to consider the cases on the other points.

## 4. THE STATUTE OF LIMITATIONS FOR DEFICIENCY ASSESSMENTS

### 5156 Civil Action 1970

The appellant says the State is barred by the Statute of Limitations from assessing a deficiency. It appears from the

record that the first notice was given on November 22, 1968. Thus, the deficiency assessment was not made within three years of the tax due date, April 30th in the year following the year assessed, for 1962, 1963, and 1964. 30 Del.C. § 1181(b). It is clear that this is not a case of fraud or gross understatement of income. It is merely a case of honest differences in the interpretation of the law. As for 1965, however, assessment was made timely, that is, before April 30, 1969. Therefore, as to that year, the merits of the question of tax law will be reached.

## 5. THE MERITS OF TAXABILITY OF PAYMENTS TO MARGARET

5156 Civil Action 1970 (1965 only)

5157 Civil Action 1970

5220 Civil Action 1970

The merits of the tax law question remain for 5157 Civil Action 1970 and 5220 Civil Action 1970 as well as for the portion of 5156 Civil Action 1970 relating to the 1965 tax year. The State Board reached the merits only in 5220 Civil Action 1970, but presumably it would reach the same result in the other two civil actions as well so this Court will decide the merits in all three cases.

The Board held that appellant Preston Lea Spruance "as the payer of trust income to his former wife for her support, is liable for the tax on such income" and, therefore, was obligated to pay a tax deficiency of $7,147.33 for the tax year 1966 (5220 Civil Action 1970).

The question before this Court is whether appellant should have included in his individual Delaware income tax return for 1965 and 1966, the payments made to his former wife pursuant to the Separation Agreement of 1955.[1]

Prior to the divorce of Lea and Margaret, they entered into an agreement under which it was provided, inter alia, that in the event Margaret obtained a final decree of divorce from Lea, he would hold in trust for the purposes set forth in the Agreement one half of all shares of Christiana Securities Company common stock and one half of all E. I. DuPont de Nemours & Co., Inc. common stock which he owned of record, and one half of all shares of duPont common stock to which he was beneficially entitled under a certain trust terminating in 1955.

Under the Agreement Lea is required to hold the shares of stock in trust, himself as trustee, and within five days of the receipt of any such dividend upon such shares, he is to pay to Margaret for her support and maintenance a sum equal to such dividend or dividends. Other provisions of said Agreement are not material to this case.

On October 28, 1955, Lea and Margaret were divorced and payments began pursuant to the terms of the Agreement.

Spruance did not report or include in his individual income tax return income received from said stock which was paid for the support of his former wife. He did, however, report the income received and the amount paid to his former wife for the support of his children which is not at issue here.

The State Tax Board finding against the appellant stated:

"Delaware has no equivalent sections in its law to Section 120(c) of the Revenue Act of 1942, Section 171 of the Internal Revenue Code of 1954, which provide very clearly that trust income paid as alimony or support is taxable to the wife. Section 1116(8), Title 30,[2] Delaware Code states:

'* * * the amount received as alimony or support from a person who has paid tax thereon under this Chapter.'

---

1. The Court assumes that the mathematical computation in the case involving the trust, 5157 Civil Action 1970, will follow automatically once the basic legal question is determined.

2. Section 1116 deals with exclusions from income.

No where in the Delaware income tax law is there any provision which permits a deduction or an exclusion from income by the payer of support or alimony.

The Attorney General has ruled in a similar type case on April 4, 1962 that:

'There is no deduction from net income under the Delaware income tax law for payments of alimony or support.'

In that unreported opinion, the husband was required to pay tax on the support payments and the wife received a refund. Our state income tax law, then, requires that tax be paid on alimony or support payments and that such payments be included in the individual tax return of the payor.

The case of Douglas v. Willcuts, 296 U.S. 1 [56 S.Ct. 59, 80 L.Ed. 3] (1935) decided before the adoption of the aforementioned federal statutory amendments is sound authority for the general principle of trust law that trust income is taxable to the husband. Delaware statutory law controls here. In the absence of provisions in the Delaware tax law imposing tax liability on the wife as recipient of trust income payments for alimony or support, or granting the payor a deduction or exclusion for said payments, we hold that, even though a trust was established by the Separation Agreement of 1955, the petitioner, as the payor of trust income to his former wife for her support, is liable for the tax on such income."

This Court does not agree with either the reasoning or the result of the State Tax Board. While it is true that there is no Delaware statute providing an exemption for the payor of alimony; it is also true that there is no Delaware statute taxing a settlor-trustee as an individual on trust income where the trust is not set up for the purpose of satisfying some legal obligation of the settlor.

Thus where it is found that the settlor of the so-called "alimony trust" had been fully discharged from his duty to support his divorced wife and that no continuing obligation, contingent or otherwise, was imposed on him in his individual capacity by either the State or the trust agreement, the settlor of the trust has been held not taxable on the trust income in a number of cases. See generally, 101 A.L.R. 397, Anno. Income of Trust As Taxable To Settlor; supplemented in 109 A.L.R. 1049; 132 A.L.R. 819; and 158 A.L.R. 1315.

■ The above test must be applied in light of Delaware law. The separation agreement involved here was made in the State of Delaware and has been construed by Delaware courts. Therefore, Delaware law controls. Fulweiler v. Spruance, Del. Supr., 222 A.2d 555 (1966); Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). This does not prevent this Court from using the many Federal cases on this question as a guideline. It should be noted at this point that prior to the adoption of the 1942 amendments to the Internal Revenue Code, [§ 22(k) (26 U.S.C.A. 1944 Supp. § 22(k), 6 FCA Title 26, § 22(k)); § 171 (a) (26 U.S.C.A., 1945, ed. § 171(a), 6 FCA Title 26, § 171(a)], the Federal statutory scheme was similar to that presently in effect in Delaware; namely, the person to be taxed in an alimony situation was not spelled out by statute. Rather, the test of the "continuing obligation" of the settlor to support his divorced wife imposed by either the trust instrument, or by State law dependent upon power of the divorce court to modify its decree as to alimony was the criterion for taxation. It is appropriate to look to the Federal law in this area.

The Supreme Court in Douglas v. Willcuts, *supra*, stated at 296 U.S. 8, 56 S.Ct. 62:

"Amounts paid to a divorced wife under a decree for alimony are not regarded as income of the wife but as paid in dis-

charge of the general obligation to support, which is made specific by the decree." (citing cures)

The Court recognized in effect that the trust's income was being used to discharge an obligation, in which case the income was clearly taxable to the settlor. As explained in 101 A.L.R. Anno., *supra* at 401:

"Although the trust was originally created by agreement of the parties shortly prior to the divorce decree, it was held that, since the divorce court had full authority to make an allowance to the wife out of her husband's property and to set up a trust to give effect to that allowance, the trust derived its force from the divorce decree, which 'adjudged and decreed that the defendant provide and create the trust fund as set out in that certain agreement * * * and that the plaintiff have the provision therein made in lieu of all other alimony or interest in the property or estate of the defendant.' Observing that there was no question of the constitutional power of Congress to attribute to the settlor the income thus segregated and paid in discharge of his obligation under the decree the court held that the statute defining gross income was broad enough to cover that involved."

Since the Court's decision in *Willcuts*, courts which have found the settlor liable for the tax have found either that the trust agreement was created to satisfy a State imposed duty of alimony or support, or that the settlor had individually guaranteed payment under terms of the trust agreement. See Helvering v. Fitch, 309 U.S. 149, 60 S. Ct. 427, 84 L.Ed. 665 (1940); Helvering v. Leonard, 310 U.S. 80, 60 S.Ct. 780, 84 L.Ed. 1087 (1940); Weir v. Commissioner of Internal Revenue, 109 F.2d 996 (3rd Cir. 1940).

Where, however, all obligations, other than fiduciary obligations retained by the settlor-trustee are discharged, the settlor has been held not liable. The Supreme Court in the case of Helvering v. Fuller, 310 U.S. 69, 60 S.Ct. 784, 84 L.Ed. 1082 (1940) pointed out the absence of any continuing obligation of the settlor which was relieved by the trust income. As pointed out in 132 A.L.R. Anno. *supra* at 829:

"* * * under Nevada law, the Court had no power to modify the divorce decree, where that power was not reserved in the decree or in the agreement approved thereby, and the settlor did not underwrite the principal as income of the trust or make any commitments, contingent or otherwise, beyond the promise to transfer securities to the trustee."

The Court itself stated at 74, 60 S.Ct. at 787:

"If respondent had not placed the shares of stock in trust but had transferred them outright to his wife as part of the property settlement, there seems to be no doubt that income subsequently accrued and paid therein would be taxable to the wife, not to him. Under the present statutory scheme that case would be no different from one where any debtor, voluntarily or under the compulsion of a court decree, transfers securities, a farm, an office building, or the like, to his creditor in whole or partial payment of his debt. Certainly, it could not be claimed that income thereafter accruing from the transferred property must be included in the debtor's income tax return. If the debtor retained no right or interest in and to the property, he would cease to be the owner for purposes of the federal revenue acts. * * * To hold that a different result necessarily obtains where the transfer is made or the trust is created as part of a property settlement attendant on a divorce would be to hold that for purposes of the federal income tax the marital obligation of the husband to support his wife cannot be discharged. But whether or not it can be depends on state law. * * * The Nevada cases tell us that under such a decree as was entered here the obliga-

tion to support was pro tanto discharged and ended. And the trust argeement contains no contractual undertaking by respondent, contingent or otherwise, for support of the wife. Hence we can only conclude that respondent's personal obligation is not a continuing one but has been discharged pro tanto. To hold that it was not would be to find substantial differences between this irrevocable trust and an outright transfer of the shares to the wife, wherein terms of local divorce law we can see only attenuated ones."

The applicable Delaware law imposes no duty or obligation on the part of this appellant to support his wife after the decree of divorce. The Delaware Constitution, in Article 2, Section 18, Del.C.Ann. provides in part as follows:

"No divorce shall be granted, nor alimony allowed, except by the judgment of a court as shall be prescribed by general and uniform law."

At the time here in issue, Title 13, Del.C. § 1531, provided in part as follows:

"a) When a divorce shall be decreed for the aggression of the husband, the complainant shall be restored to all her real and personal estate and allowed out of her husband's real and personal estate, such share as the Court thinks reasonable; but if the divorce be for the wife's aggression, the Court may restore the whole or a part of her real estate, and also such share of her husband's personal property as seems reasonable.

b) Any allowance or division of property under subsection (a) of this section, may be a gross sum or an annual allowance, or an assignment by metes and bounds."

This Court in Beres v. Beres, 2 Storey 133, 154 A.2d 384 (1959) in construing the Delaware Constitution and 13 Del.C. § 1531 held that the Court has no power under the statutory scheme to make an award of permanent alimony. The Court stated at p. 385:

"The constitutional provision, enacted to limit jurisdiction over divorce and alimony matters to the court or courts designated in specific legislation, also makes it clear that such court or courts may act as to divorce and alimony only under and pursuant to specific statutory provisions."

The Court concluded, therefore, since there was not statute, no power was had to "award any other kind of alimony" other than temporary alimony. 13 Del.C. § 1530.

The only obligation on the part of this appellant, therefore, is found in the trust agreement. Once the agreement was effected upon the divorce of the appellant and his wife, the only obligations that remain are those of the appellant as a trustee. The contractual obligation alone, which is satisfied by the executed trust, is not enough to find continuing obligation. The Court in Dixon v. Commissioner of Internal Revenue, 109 F.2d 984, at 986 (3rd Cir. 1940) stated:

"The mere fact that the trust was created by an enforceable agreement does not, of course, technically impose any contractual obligation on the settlor with relation to trust income once the trust is set up. And practically speaking, to hold otherwise would be to tax, despite the statute, every trust created by agreement to the settlor, no matter how insignificant the consideration."

In the case of Letts v. Commissioner of Internal Revenue, 41 B.T.A. 1172 (1940) (cited at 132 A.L.R. 830), the Court found that where there was no obligation, other than the contractual obligation to set up the trust, the settlor could not be taxed. The Court said:

"The significant facts in both cases are that by the terms of the agreement entered into before the divorce, the husband was released unconditionally from all obligations to support his wife in return for setting up the trust; that the settlor did not undertake to guarantee or underwrite in any manner either the value of the

corpus of the trust after its establishment or the continuance of any given income from the trust; and that the decree of divorce absolving the parties from all rights and claims against each other was final and not subject to any later modification by the court."

It is clear from the previous discussion of Delaware law that, if any obligation exists, it exists as part of the "alimony trust", which according to its own terms and the final decree itself is not merged into the final decree of the court. The only directive of the court is that " * * * the parties are hereby directed to comply with and carry out the terms and provisions thereof". The agreement itself speaks plainly of the obligation of the appellant.

Said agreement as affixed to the final decree in Item 6 provides as follows:

"In the event a decree of divorce is granted to the Wife, the Husband and Wife each waive, release, and forever discharge the other and his or her heirs, executors, administrators and assigns, of and from any and all actions, suits, debts, claims, demands and obligations whatsoever in law and in equity, which he or she may or might have or claim to have against the other by reason of any matter, cause, or thing whatsoever, from the beginning of the world to the day of the date of this agreement, except for such rights and claims as either of them may have against the other under the terms of this agreement, it being the intention of the Husband and Wife that thereafter, there shall be, as between them, only such rights and obligations as are specifically provided in this agreement and that except as herein otherwise provided, all liability of every kind and nature on the part of the Husband to the Wife, and on the part of the Wife to the Husband past, present and future, actual or potential; shall cease and terminate absolutely and forever upon the performance by the parties of the terms and conditions of this agreement and each of the parties hereto hereby waives all claims, present or future in or to the property of the other."

Once the appellant set up the trust, his individual obligations to his wife for her support and maintenance ended. All duties to her that continue are only those duties he must perform as the trustee of the trust. The trustee is not taxed as an individual on the income of the trust. Delaware treats trusts as separate taxables with special governing rules. 30 Del.C. §§ 1151 and 1152.

The construction herein is not inconsistent with 30 Del.C. § 1116(8). Since the person from whom the "alimony or support" payment was received is not, under these circumstances, obligated to pay the tax, the only proper inference is that the recipient can not make the exclusion and, therefore, must herself pay the tax.

Lea is not personally liable for income tax on the trust income payable to Margaret.

## 6. SUMMARY OF APPEAL CASES

*5155 Civil Action 1970*: The decision of the State Tax Board is affirmed on the ground that the taxpayer failed to take a timely appeal to the State Tax Board. IT IS SO ORDERED.

*5156 Civil Action 1970*: The decision of the State Tax Board will be reversed on the following grounds: the stipulation below did not determine the matter; the statute of limitations bars a deficiency assessment for 1962, 1963 and 1964; and the Tax Board erred on the merits. An order should be presented by the taxpayer, on notice, within 10 days.

*5157 Civil Action 1970*: The decision of the State Tax Board will be reversed on the grounds that the stipulation below did not determine the matter and the Tax Board erred on the merits. An order should be presented by the taxpayer, on notice, within 10 days.

*5520 Civil Action 1970*: The decision of the State Tax Board will be reversed on the ground that the Tax Board erred on the merits. An order should be presented by the taxpayer, on notice, within 10 days.

## 7. THE MANDAMUS CASE

### 5126 Civil Action 1970

The taxpayer, as an individual and as trustee, also filed a petition for a writ of mandamus to compel the State Tax Board to act in the various cases. In the light of this opinion, the petition would appear moot. The petition is therefore denied. It is so ordered.