PRESTON LEA SPRUANCE, TRUSTEE OF TRUST CREATED BY SEPARATION AGREEMENT BETWEEN PRESTON LEA AND MARGARET HALSEY SPRUANCE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

PRESTON LEA SPRUANCE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2501–69, 4013–70.   Filed April 30, 1973.

*David C. Moore*, for the petitioner.

*Alan E. Cobb*, for the respondent.

DAWSON, *Judge:* These two cases were consolidated for trial, briefing, and opinion. In docket No. 2501–69 the respondent determined deficiencies in the trust's Federal income taxes as follows:

| Taxable year | Deficiency |
|---|---|
| 1962 | $2, 918. 54 |
| 1964 | 36, 133. 75 |
| 1965 | 49, 223. 50 |

In docket No. 4013–70 respondent determined a deficiency in Federal gift tax against petitioner Preston Lea Spruance and an addition to tax as follows:

| Taxable year | Deficiency | Addition to tax sec. 6651(a) [1] |
|---|---|---|
| 1955 | $93,348.21 | $23,337.05 |

We must decide four issues, namely:

(1) Whether Preston Lea Spruance, petitioner in docket No. 4013–70, made a taxable gift when he transferred various stocks in trust for the benefit of his wife and children.

(2) Whether Preston Lea Spruance, petitioner in docket No. 4013–70, is liable for the addition to tax under section 6651(a) for failure to file a Federal gift tax return covering the alleged gift to his children in 1955.

(3) Whether Preston Lea Spruance, as the trustee-petitioner in docket No. 2501–69, recognized long-term capital gain in the taxable years 1962, 1964, and 1965 under section 1111 on the receipt of General Motors Corp. divestiture stock. In connection with this issue, an equitable estoppel issue was raised by the respondent in an amendment to his answer.

(4) Whether the statute of limitations bars assessment and collection of any deficiency in income tax due from Preston Lea Spruance, as the trustee-petitioner in docket No. 2501–69, for the taxable year 1962.

### FINDINGS OF FACT

Many of the facts have been stipulated by the parties. The stipulation and supplemental stipulation, together with the exhibits attached thereto, are incorporated herein by this reference.

Preston Lea Spruance (herein called petitioner or Lea) was a legal resident of Wilmington, Del., at the time the petitions were filed in these cases. Also the trust of which he was trustee was situated in Wilmington. As trustee he filed U.S. Fiduciary Income Tax Returns for taxable years 1962, 1964, and 1965 with the district director of internal revenue at Wilmington. He did not file a U.S. Gift Tax Return in 1955 on his own behalf.

Petitioner married Margaret Halsey Spruance (herein called Margaret) on June 25, 1932. They lived in Wilmington and acquired property as tenants by the entirety. Four children were born of their marriage. Preston Lea Spruance, Jr., was born on July 14, 1933. Margaret Grandy Spruance was born on September 20, 1935. William Halsey Spruance was born on August 20, 1938. And Alice Lea Spruance was born on June 3, 1945. As of October 28, 1955, they were 22, 20, 17, and 10 years of age, respectively.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Lea was born on September 19, 1910, and on October 28, 1955, was 45 years old. Margaret was born on October 10, 1910, and on October 28, 1955, was also 45 years old.

In 1949, Lea made a gift of 3 shares of Christiana Securities Co. common stock to each of his four children; in 1950 he made a similar gift of 2 shares to his children. In both years he filed U.S. Gift Tax Returns covering the gifts. The value of 1 share of Christiana Securities Co. stock in 1955 was $14,600.

During 1953, Lea's four children had an aggregate gross income of $6,128.48. In 1954, their gross income amounted to $6,285.

On November 29, 1951, Lea and Margaret separated. Margaret then instituted an action for separate maintenance in the Court of Chancery of New Castle County, Del., to compel Lea to support her and three of the children who were minors. She asked for a monthly allowance of $2,500. Margaret also brought an action for divorce in the Superior Court of New Castle County, Del.

On July 25, 1955, while the above actions were pending, Lea and Margaret entered in a separation agreement resolving "all matters in controversy between them and relative to their marital and property rights and support of said minor children." [2] Paragraph 1 of the agreement provides: "In the event the Wife files an action for divorce against the Husband and a final decree of divorce is granted by a court of competent jurisdiction, the Husband shall make the following payments * * * [summarized below]." The last paragraph (paragraph 15) of the agreement provides: "This agreement shall become effective only if and when a final decree of divorce is granted to the Wife by a court of competent jurisdiction." The agreement also provided in part as follows:

1. Lea was to hold separately the following shares of stock:

| Number of shares | Stock | FMV as of 10/28/55 |
|---|---|---|
| 55 | Christiana Securities Co. (common) | $803,000.00 |
| 1,137 | E. I. duPont de Nemours & Co., Inc. (common) | 243,460.13 |
| 48 | Wilmington Trust Co. (common) | 8,640.00 |
| 25 | Christiana Securities Co. (preferred) | 3,475.00 |
| | | 1,058,575.13 |

[2] Under the law of Delaware at the time of the making of the agreement, a woman with children, whose husband died intestate, was entitled to a one-third share of her husband's personal estate, a one-half interest as tenant in dower in her husband's real estate, and a one-third life interest as tenant in dower in any real estate of which her husband was seized at any time during the marriage. Del. Code Ann., tit. 12, secs. 502, 512, and 901. Upon divorce for an aggression of the husband, a wife had a right to be restored to all her real estate and a right to her husband's real and personal estate as the court thought reasonable. Del. Code Ann., tit. 13, sec. 1531.

At the time of the making of the agreement, Lea owned, of record, 110 shares of Christiana Securities Co. common stock, 1,274 shares of E. I. duPont de Nemours & Co., Inc., common stock, and 96 shares of Wilmington Trust Co. common stock. Also he was beneficiary of a trust created by his father on Feb. 20, 1930. This trust was to terminate in 1955. Included in the trust were 1,000 shares of E. I. duPont de Nemours & Co., Inc., common stock and 50 shares of Christiana Securities Co. preferred stock.

2. Within 5 days of the receipt of any cash dividends upon any of such shares, Lea was to pay to Margaret a sum equal to such dividend or dividends.

3. Ten percent of all such dividends payable to Margaret was payable for the support of each minor child so long as the child remained a minor; accordingly, since three of the four children were minors as of October 28, 1955, 30 percent would have had to have been allocated among them as child support. As each child reached majority the amount payable to Margaret for her own support increased so that when the youngest child reached majority, all payments to Margaret were "wife support" payments.

4. If Margaret predeceased Lea, he was to pay an amount equal to the amount of any dividends received from the separately held stock in equal shares to the four children. The share of any minor child was to be placed in trust for such child until he or she reached majority. At Lea's death the separately held stock was to pass under his will to the four children in equal shares.

5. If Lea predeceased Margaret, the separately held stock was to be placed in trust and any dividends upon the stock were to be paid to Margaret during her lifetime. Upon her death the shares were to be transferred to the four children in equal shares.

6. Lea agreed to provide funds for the education of the minor children in the event that his mother failed to continue providing funds for that purpose (as she had provided in the past).

In general, the separation agreement is a highly sophisticated, 15-page document that was prepared by attorneys who understood the tax laws as well as the law of trusts. The provisions calling for Lea to "continue to hold separately" the above-listed shares of stock do not clearly enunciate the parties' intention of creating thereby a trust for the benefit of Margaret and the children.

On July 28, 1955, the Superior Court of New Castle County, Del., granted Margaret, in her action for divorce, a decree nisi.

On October 28, 1955, the Superior Court granted Margaret a final divorce decree. The decree absolute reads in part as follows:

> That the said Separation Agreement entered into between the parties on the 25th day of July, A.D. 1955, a copy of which is annexed hereto, hereby incorporated herein by reference, is hereby approved, and the parties hereto are hereby directed to comply with and carry out the terms and provisions thereof.

The separation agreement was not merged into the divorce decree but survived it.

Under Delaware law the divorce court did not have the power to vary the terms of the parties' separation agreement. See *Spruance* v. *Director of Revenue*, 277 A.2d 695 (Del. Super. 1971), and the authorities cited therein.

On October 29, 1955, 1 day after the granting of the decree absolute, Margaret and Lea entered into a supplemental agreement which provided in part as follows:

1. The Husband shall, on or before December 15, 1955, designate the certificate numbers and issue stop-transfer orders revocable only with the consent of the Wife to the companies and their transfer agents so as to effectually stop any transfer of the following stocks in the following amounts:

55 shares of common stock of Christiana Securities Company.

1,137 shares of common stock of E. I. duPont de Nemours & Company, Inc.

48 shares of common stock of Wilmington Trust Company.

25 shares of preferred stock of Christiana Securities Company.

This agreement too is a sophisticated, tax-wise document.

Lea turned over to Margaret during the remainder of 1955 dividends of $14,725 that were received on the separately held stock. Lea reported these dividends and claimed an offsetting alimony deduction for an identical amount on his Federal income tax return for taxable year 1955. In addition, on the same return, he claimed a 4-percent dividends-received credit for these dividends. He did not report any gain resulting from a transfer of the separately held stock. Nor did he indicate that a trust had been created by virtue of the terms of the separation agreement.

Lea's 1955 return was examined by an Internal Revenue Service agent. In connection with the examination, Lea gave the agent a copy of the separation agreement but did not supply a copy of the supplemental agreement. The agent made no adjustment to the dividends item, the alimony deduction item, or the dividends-received credit item on the return.

In 1961, the Supreme Court of the United States, having found in a prior decision that E. I. duPont de Nemours & Co., Inc., had violated the Clayton Act, sec. 2, 15 U.S.C. sec. 18, ruled that duPont had to divest itself of all and any interest in General Motors Corp. stock. *United States* v. *duPont & Co.*, 366 U.S. 316 (1961). As a result of that decision, duPont and Christiana Securities Co. made distributions to their shareholders of General Motors stock in 1962, 1964, and 1965.

In 1962, Congress passed Pub. L. 87–403, 76 Stat. 4, adding section 1111 to the Internal Revenue Code of 1954. The section grants special tax relief to the holders of duPont and Christiana Securities stock who received General Motors stock on the divestiture:

The distribution will be treated as a return of capital, and its full fair market value will reduce the basis of the stock with respect to which it is made. If, however, the fair market value of the stock distributed exceeds the basis of the stock with respect to which the distribution is made, then gain is recognized to the extent of the excess and is taxable as any other gain would be. (This is the same as the income tax treatment of distributions made by corporations which have no earnings and profits.) [S. Rept. No. 1100, 87th Cong., 1st Sess., p. 2 (1961).]

Lea's cost basis for the separately held 1,137 shares of duPont stock and 4,400 shares of Christiana Securities stock (this stock split 80 for 1 on March 10, 1961) totaled $92,358. The fair market value of the General Motors stock distributed in 1962, 1964, and 1965, with respect to these two separately held stocks, and other facts of interest, are reflected in the following schedule:

| Stock | Shares | Date acquired | Cost or other basis | GM shares received 1962 | FMV of GM stock received | Gain | Reduced basis after 1962 distribution |
|---|---|---|---|---|---|---|---|
| duPont | 1,030 | Feb. 20,1930 | $2,503 | 515 | $24,559 | [1] $22,056 | --- |
| Do | 4 | Mar. 5,1948 | 166 | 2 | 95 | --- | $71 |
| Do | 8 | Jan. 3,1949 | 365 | 4 | 191 | --- | 174 |
| Do | 12 | Mar. 4,1949 | 551 | 6 | 286 | --- | 265 |
| Do | 21 | Jan. 3,1950 | 1,289 | 10½ | 501 | --- | 788 |
| Do | 8 | Mar. 2,1951 | 721 | 4 | 191 | --- | 530 |
| Do | 28 | Jan. 2,1952 | 2,557 | 14 | 668 | --- | 1,889 |
| Do | 5 | Mar. 7,1952 | 437 | 2½ | 119 | --- | 318 |
| Do | 5 | Mar. 5,1953 | 474 | 2½ | 119 | --- | 355 |
| Do | 10 | Jan. 4,1954 | 1,065 | 5 | 239 | --- | 826 |
| Do | 6 | Mar. 3,1955 | 1,040 | 3 | 143 | --- | 897 |
| Christiana Securities[2] | 4,400 | Jan. 9,1935 | 81,190 | 1,466⅔ | 80,392 | --- | 798 |
| Total | | | 92,358 | --- | 107,503 | 22,056 | --- |

| Stock | Shares | Date acquired | Reduced basis after 1962 distribution | GM shares received 1964 | FMV of GM stock received | Gain | Reduced basis after 1964 distribution |
|---|---|---|---|---|---|---|---|
| duPont | 1,030 | Feb. 20,1930 | --- | 370.80 | $29,293 | $29,293 | --- |
| Do | 4 | Mar. 5,1948 | $71 | 1.44 | 114 | 43 | --- |
| Do | 8 | Jan. 3,1949 | 174 | 2.88 | 228 | 54 | --- |
| Do | 12 | Mar. 4,1949 | 265 | 4.32 | 341 | 76 | --- |
| Do | 21 | Jan. 3,1950 | 788 | 7.56 | 597 | --- | $181 |
| Do | 8 | Mar. 2,1951 | 530 | 2.88 | 228 | --- | 302 |
| Do | 28 | Jan. 2,1952 | 1,889 | 10.08 | 796 | --- | 1,093 |
| Do | 5 | Mar. 7,1952 | 318 | 1.80 | 142 | --- | 176 |
| Do | 5 | Mar. 5,1953 | 355 | 1.80 | 142 | --- | 213 |
| Do | 10 | Jan. 4,1954 | 826 | 3.60 | 284 | --- | 542 |
| Do | 6 | Mar. 3,1955 | 897 | 2.16 | 171 | --- | 726 |
| Christiana Securities | 4,400 | Jan. 9,1935 | 798 | 1,466⅔ | 115,867 | 115,069 | --- |
| Total | | | | | 148,203 | 144,535 | --- |

| Stock | Shares | Date acquired | Reduced basis after 1964 distribution | GM shares received 1965 | FMV of GM stock received | Gain | Reduced basis after 1965 distribution |
|---|---|---|---|---|---|---|---|
| duPont | 1,030 | Feb. 20,1930 | --- | 515 | $49,472 | $49,472 | --- |
| Do | 4 | Mar. 5,1948 | --- | 2 | 192 | 192 | --- |
| Do | 8 | Jan. 3,1949 | --- | 4 | 384 | 384 | --- |
| Do | 12 | Mar. 4,1949 | --- | 6 | 576 | 576 | --- |
| Do | 21 | Jan. 3,1950 | $181 | 10½ | 1,009 | 828 | --- |
| Do | 8 | Mar. 2,1951 | 302 | 4 | 384 | 82 | --- |
| Do | 28 | Jan. 2,1952 | 1,093 | 14 | 1,315 | 252 | --- |
| Do | 5 | Mar. 7,1952 | 176 | 2½ | 240 | 64 | --- |
| Do | 5 | Mar. 5,1953 | 213 | 2½ | 240 | 27 | --- |
| Do | 10 | Jan. 4,1954 | 542 | 5 | 480 | --- | $62 |
| Do | 6 | Mar. 3,1955 | 726 | 3 | 288 | --- | 738 |
| Christiana Securities | 4,400 | Jan. 9,1935 | --- | 1,466⅔ | 145,017 | 145,017 | --- |
| Total | | | | | 199,627 | 196,894 | --- |

Respondent's figure is $22,066.
80 for 1 stock split Mar. 10, 1961.

Lea did not report on his individual returns for 1962, 1964, and 1965 any gain pursuant to section 1111 due to the receipt of General Motors divestiture stock, though he remained the owner of record of the separately held shares.

On July 31, 1962, Lea requested the district director of internal revenue in Wilmington, Del., for a ruling as to whether the separation agreement dated July 25, 1955, created a trust and as to the proper tax treatment of the receipt of the General Motors divestiture stock. In connection with his request, Lea forwarded a copy of the separation agreement. He did not forward a copy of the supplemental agreement.

In response to the ruling request, the National Office of the Internal Revenue Service, in a technical advice memorandum dated July 23, 1963, stated (1) that a trust was not created for Federal tax purposes and (2) that for purposes of determining the gain realized by Lea on the 1962 distribution of divested General Motors stock, Lea's basis in the separately held stock was his cost or other basis for such stock. In short, his basis in the stock was not stepped-up by virtue of a prior realization of gain; there was no prior realization; and there had been no transfer.

Lea chose not to follow the technical advice memorandum and filed a U.S. Fiduciary Income Tax Return for 1962 reporting the dividends received on the separately held stock amounting to $45,396. He attached to the return a copy of the separation agreement but not a copy of the supplemental agreement. He did not report any gain on the distribution of the General Motors divestiture stock.

On February 28, 1964, Lea filed a complaint in the Court of Chancery of the State of Delaware in and for New Castle County seeking a declaratory judgment as to whether the separation agreement created a trust and whether he, as trustee, held the separately held duPont and Christiana Securities stock in trust for the benefit of Margaret and the four children. He also sought instructions as to the disposition of the General Motors divesture stock. The Court held, on October 29, 1965, that a trust was created and that the divestiture stock should be added to the trust corpus. In his opinion, Vice Chancellor Short said:

I * * * am satisfied that the [Agreement] * * * did, in law, create a trust. I so find in spite of defendant's [Margaret's] contention that no trust was intended. While it appears that the agreement was drawn by able counsel who did not see fit to use the ordinary technical terms creating a trust, it is obvious that all of the essential elements of a trust are here present. By the terms of the agreement plaintiff undertook to hold specified property for the benefit of defendant and their children. The intention was obviously to make a present transfer of the equitable estate with reservation of the legal title in plaintiff. The fact that the trust results from an agreement of the parties rather than by declaration of the plaintiff is of no moment. Neither is his subsequent conduct,

in the circumstances presented, sufficient to overcome the fact that a trust was created at the time the agreement was made. Whatever tax consequences may follow from plaintiff's course of conduct following the execution of the agreement is not here in issue. [*Spruance* v. *Fulweiler*, C.A. No. 1943 (dated Oct. 29, 1965).]

This decision was affirmed by the Supreme Court of the State of Delaware on July 28, 1966. Noting that there was a supplemental agreement, the Supreme Court relied upon the fact that the stop-transfer orders, provided for therein, prevented Lea from dealing with the separately held stock as his own property:

In the case at bar all the elements exist to create the relationship known as a trust. Lea has set aside certain securities and by stop-transfer orders has made it impossible for him to deal with them as his own property. He has obligated himself to pass on the dividends received on these securities to his former wife and children. He has obligated himself to provide by will for the ultimate vesting of title to these in his children or their issue. In short, the Agreement divests Lea of any beneficial interest in the corpus, represented by the securities separately held, and has transferred that interest to his wife and children. The fundamental elements of a trust relationship thus exist. [*Fulweiler* v. *Spruance*, 222 A.2d 555, 560 (Del. 1966).]

In a statutory notice of deficiency mailed to Lea, as trustee, respondent determined that Lea, as trustee, recognized long-term capital gain under section 1111 on the receipt of General Motors divestiture stock in the following amounts:

| Year | Amount |
|---|---|
| 1962 | [3] $22,066 |
| 1964 | 144,535 |
| 1965 | 196,894 |

In making his calculations, respondent used as Lea's basis in the stock (in reference to which the divestiture stock was distributed) the same basis as Lea's basis for the stock at the time of the transfer in trust, i.e., the time (October 28, 1955) at which the separation agreement became effective, Lea's basis for the separately held stock as of October 28, 1955, was $92,358; the fair market value of the stock as of that date was $1,046,460.13.

At the time the separation agreement was executed Lea was aware of the fact that if the separately held stock were given to Margaret outright or if a trust were created for her benefit, a large capital gains tax might have to be paid by him. Lea did not report any gain on his individual 1955 return resulting from the transfer in trust. He did not indicate in any manner on that return that a gain was recognized or even that a trust had been created.

In a sworn affidavit executed on July 3, 1964, and filed with the Court

---

3 According to our calculations, based on respondent's Exhibit C attached to his amendment to answer, this figure should be $22,056.

of Chancery in connection with the trust-determination proceeding, Lea stated:

When this deponent executed the Agreement and at all times thereafter, he *understood* that his responsibilities, duties, obligations, accountability and liabilities under the Agreement were of a fiduciary nature. [Emphasis supplied by deponent.]

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The recognition of the existence of the trust \* \* \* would comply with the intent and spirit of the Agreement as this deponent understood it when he executed the Agreement \* \* \*

Lea did not make this understanding known to the investigating Internal Revenue Service agent upon audit.

ULTIMATE FINDINGS

1. The 1955 transaction, which was held by the Delaware courts to have created a trust, was a taxable gift in the amount of $448,158.37.

2. Regardless of his understanding as to whether or not a trust had been created, Lea relied upon the advice of counsel in conducting his affairs in 1955. His failure to file a Federal gift tax return was due to reasonable cause and not to willful neglect.

3. Lea, as trustee, recognized no gain in the taxable years 1962, 1964, and 1965 because of the distribution to him of General Motors divestiture stock.

4. The statute of limitations bars the assessment of a deficiency in income tax due from Lea, as trustee, for the taxable year 1962.

OPINION

The facts, as we have found them, can be summarized as follows: Preston Lea Spruance (Lea) and his wife, Margaret, entered into a written separation agreement in July 1955 settling their marital (including support) and property rights and their minor children's support rights. The agreement was conditioned upon the wife being granted a divorce and was to become effective when the divorce was granted. Pursuant to the agreement, when read together with a supplemental agreement, Lea transferred duPont and Christiana Securities stock having a fair market value of $1,058,575.13 in trust for the benefit of Margaret and their four children. On the date of the transfer one child was an adult and the others were age 20, 17, and 10. The income interest in the stock—called "separately held stock" in the separation agreement—was transferred in part to Margaret for her support and maintenance and in part to his children for their support and maintenance while minors. Upon the death of Lea and Margaret the remainder interest in the stock will pass to the children. The Delaware

divorce court adopted the separation agreement; it did not have the power to modify the agreement, so the agreement survived the court's decree.

Lea did not report any gain as a result of the above transaction. Instead, he reported dividends received on the separately held stock, claimed offsetting alimony deductions since the dividends were turned over to Margaret, and took advantage of a dividends-received credit then in effect. He did not reveal that a trust had in fact been created. Nor did he file a gift tax return in connection with any part of the 1955 transfer.

Respondent views the 1955 transaction as a transfer of stock to the trust that was in fact part sale to the wife under a long line of authority including *United States* v. *Davis*, 370 U.S. 65 (1962), and part gift to the children. Taxation of the sale is barred by the statute of limitations. Taxation of the gift is still possible because no Federal gift tax return was filed.

After the 6-year statute of limitations had run on his 1955 personal income tax return, Lea obtained a ruling by the Delaware courts that the separation agreement and the supplemental agreement had together provided for the creation of a trust. Up to that time, the character of the 1955 transaction was unclear to strangers to the dealings.

During the years 1962, 1964, and 1965, Lea, as trustee, received distributions from duPont and Christiana Securities of General Motors divestiture stock. The divestiture stock had a value of $107,503, $148,203, and $199,627, or a total of $455,333. The taxation of such divestiture stock is the special subject of section 1111 of the Code. Instead of being taxed as a regular dividend, the divestiture distribution is first treated as a return of capital and then, when basis is exhausted, as capital gain. In applying that section, Lea stepped up the basis of the separately held stock 100 percent; he ignored the possibility that part of the prior transfer amounted to a gift to his children.

Respondent determined that the stock's basis should equal its basis in the hands of Lea, the transferor, on the ground that Lea, the trustee, is estopped by virtue of his actions—in his individual, nontrustee capacity—from claiming any step-up in basis. In the alternative, respondent claims that if there is no estoppel, the basis of the stock cannot exceed the value of the consideration given up by Margaret, i.e., the value of the marital rights that she released, exclusive of the value of the children's support rights. Respondent does not make the "back up" argument that, in any event, the stock transferred to the trust should have a carryover basis.

On these facts the parties present four issues for our decision. The first two concern Lea the individual. The second two concern Lea as trustee of the trust created by the agreements between him and Margaret.

1. *Tax consequences of the transfer of stock in trust.*—Respondent determined that there was a gift for gift tax purposes to the extent that the total value of the separately held stock at the time of transfer exceeded the value of the income interest in the stock transferred to Margaret and the value of the income interest in the stock transferred to the minor children. Petitioner contends that the entire transfer was for full and adequate consideration.

We hold that there was a taxable gift in the amount determined by the respondent.

Section 2512(b) provided, on the date of the transfer, as follows:

Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

Section 2516 of the Code provides:

Where husband and wife enter into a written agreement relative to their marital and property rights and divorce occurs within 2 years thereafter (whether or not such agreement is approved by the divorce decree), any transfers of property or interests in property made pursuant to such agreement—

(1) to either spouse in settlement of his or her marital or property rights, or

(2) to provide a reasonable allowance for the support of issue of the marriage during minority,

shall be deemed to be transfers made for a full and adequate consideration in money or money's worth.

We interpret these sections to mean, in the context of this case, that petitioner must prove that the transfer of stock in trust was either to settle his wife's marital or property rights or to provide a reasonable allowance for the support of the minor children. Having failed to prove this with respect to a portion of the property transferred, that portion must be taxed as a gift. Incident to the problem of proof, we observe that respondent has not determined that the value of the income interest going to the minor children was excessive, i.e., that the transfer provided for more than a reasonable support allowance. Respondent has simply calculated the value of Margaret's income interest and the children's minority income interests—all according to the tables appearing in section 20.2031–7(f), Estate Tax Regs.—and subtracted the sum of these values from the total value of the stock

transferred.[4] The end result is that the value of the taxable gift is $448,158.37. Petitioner does not challenge respondent's calculations or his use of the estate tax tables.

Petitioner argues that no gift was intended and that, in fact, no gift occurred, citing *United States* v. *Davis*, *supra*, and *Matthews* v. *United States*, 425 F.2d 738 (Ct. Cl. 1970). But it is well settled that donative intent on the part of the transferor is not an essential element in the application of the gift tax to a given transfer. Sec. 25.2511–1(g)(1), Gift Tax Regs.; *Commissioner* v. *Wemyss*, 324 U.S. 303 (1945); *Merrill* v. *Fahs*, 324 U.S. 308 (1945); *May T. Hrobon*, 41 T.C. 476, 499 (1964). And as for the two cases cited by the petitioner, both deal with the gift concept under income tax as opposed to gift tax law. Thus, in *Davis*, where the Supreme Court states in a footnote that "To intimate that there was a gift to the extent the value of the property exceeded that of the rights released not only invokes the erroneous premise that every exchange not precisely equal involves a gift but merely raises the measurement problem * * *

---

[4] Respondent explains his approach in the following manner:

"The value of the stock transferred, the value of the income interest transferred to Margaret, together with the value of the income interest transferred to the children while minors, and the value of the taxable gift is shown as follows:

| | |
|---|---|
| Value of stock on 10/28/55 | $1,058,575.13 |
| Value of Margaret's income interest together with value of income interest of the children while minors | 610,416.76 |
| Value of taxable gift | 448,158.37 |

"The value of Margaret's income interest, together with the value of the income interest of the children while minors, was determined under section 20.2031–7(f), Table I, of the Estate Tax Regulations, using the factor used in determining the value of a life estate in property for the life of one whose present age is 45 years or a factor of .57664. The remaining value of the property transferred, the value of the taxable gift, is broken down into two parts, shown as follows:

| | |
|---|---|
| Children's income interest that will 'fall in' upon the death of Margaret | $101,834.94 |
| Children's remainder interest as survivors of Preston and Margaret | 346,323.43 |
| Value of taxable gift | 448,158.37 |

"The factor used in determining the remainder value of the children's interest as survivors of Preston and Margaret was determined under section 20.2031–7(f), Table III, of the Estate Tax Regulations, using the factor used in determining the value of a remainder interest in property to take effect upon the death of the survivor of two persons whose ages are both 45 years or a factor of .32716. The value of the children's income interest that will 'fall in' upon the death of Margaret was determined by subtracting from the factor in Table I used in determining the value of a remainder interest in property to take effect after an estate for the life of one whose present age is 45 years, .42336, the above factor of .32716 taken from Table III, to arrive at a factor of .09620."

A simpler method is available in arriving at the value of the taxable gift. One can simply apply the factor of a remainder interest per Table I of the Estate Tax Regulations to take effect upon the death of a person whose present age is 45 (0.42336) to the value of the stock transferred in trust ($1,058,575.13), as was done by the respondent in his statutory notice. Using either method, one will arrive at the value of the taxable gift made by Preston.

[discussed elsewhere in the opinion]," the Court is speaking of "gift" for income tax purposes. The next sentence in the footnote makes this clear: "Cases in which this Court has held transfers of property in exchange for the release of marital rights subject to gift taxes are based not on the premise that such transactions are inherently gifts but on the concept that in the contemplation of the gift tax statute they are to be taxed as gifts." *United States* v. *Davis, supra* at 69 fn. 6. And in *Matthews*, the plaintiff argued that there was a gift, hoping to avoid a finding that the transaction was a transfer for consideration to which the income tax rule of *Davis* would apply. However, the Court of Claims found that there was no gift under Federal income tax law. *Matthews* v. *United States, supra* at 748–754. Moreover, neither case involved a transfer of appreciated property to persons other than a spouse or minor children. Here we have, among other things, a transfer of present and future interests in part to adult children.

Petitioner next argues that the case of *Harris* v. *Commissioner*, 340 U.S. 106 (1950), blocks respondent's path. We disagree. The Supreme Court in *Harris* was presented with the question whether petitioner was liable for a gift tax where she and her husband mutually exchanged certain interests in property and certain rights that they had against each other, including the surrender of marital inheritance rights, pursuant to a separation agreement, and where it was conceded that the value of what she gave exceeded the value of what she received. The agreement was conditioned upon the subsequent divorce; it was to be (and was) submitted for approval to the divorce court; it was not operative unless the divorce followed. The agreement was also written so as to survive the divorce decree. And, it is noted, the Nevada divorce court there involved has the power to accept or discard the settlement agreement provisions, to add or subtract from them as it saw fit. The Court held that the transfer in question was not made pursuant to a "promise or agreement" but was "founded" upon the divorce decree; therefore, the transfer was not a taxable gift under gift tax rules imported from the estate tax area. Respondent makes two arguments to support his circumvention of *Harris*: First, *Harris* is distinguishable. There the divorce court had the power to vary the terms of the parties' separation agreement, a factor that has been considered as significant in subsequent cases. *McMurtry* v. *Commissioner*, 203 F. 2d 659 (C.A. 1, 1953) ; *Commissioner* v. *Watson's Estate*, 216 F. 2d 941 (C.A. 2, 1954) (an estate tax case). Here the divorce court had no such power. Consequently, "the rationale of the

Harris case does not apply." [5] *Estate of Chester H. Bowers*, 23 T.C. 911 (1955), acq. 1955–2 C.B. 4; Rev. Rul. 60–160, 1960–1 C.B. 374. Second, the holding in *Harris* does not immunize from the gift tax all transfers that are enforceable as court decrees. Stated another way:

Thus, although the crux of the *Harris* case was that the transfer was made pursuant to a court decree rather than a promise or agreement, *Harris* did not incorporate a broad rule that all transfers based on a court decree need not be supported by adequate consideration, and that all involuntary transfers are free from gift tax. It would seem that the *Harris* rationale is to be limited only to those cases involving relinquishment of marital rights. * * * [Surrey & Warren, Federal Estate and Gift Taxation 222–223 (1961).]

We agree that respondent's second route is a correct one on the authority of *In Re Estate of Hartshorne*, 402 F. 2d 592 (C.A. 2, 1968); *Rosenthal* v. *Commissioner*, 205 F. 2d 505 (C.A. 2, 1953); *Karl T. Wiedemann*, 26 T.C. 565 (1956); *Roland M. Hooker*, 10 T.C. 388 (1948), affd. 174 F. 2d 863 (C.A. 5, 1949); *Edmund C. Converse*, 5 T.C. 1014 (1945), affd. 163 F. 2d 131 (C.A. 2, 1947). These cases are precedent for the rule that a taxpayer-transferor who transfers property (a) in return for his or her spouse's marital rights or property rights, (b) to provide a reasonable allowance for the support of their minor children, and (c) to put the property in the hands of adult children, has made a taxable gift to the extent of (c). "To construe the statute as suggested by petitioner would open a means for a divorcing parent to transfer property to his adult child free of both gift tax and estate tax." *Estate of Hubert Keller*, 44 T.C. 851, 860 (1965).

Finally, with regard to this issue, petitioner stresses that the portion of the transfer determined to be taxable by the respondent is not a gift because Margaret bargained her own rights in return for the transfer to the children. *Estate of Robert Rodger Glen*, 45 T.C. 323 (1966). We cannot assume, however, that this was the case. The lone statement of the petitioner, in response to his attorney's question, that the wife did so insist is not sufficient evidence on this vital point, especially where other sources of the desired information were not explored and where the petitioner's memory admittedly was not very good with respect to what transpired approximately 17 years ago. *Karl T. Wiedemann, supra; Estate of Hubert Keller, supra; Estate of Harold Hartshorne*, 48 T.C. 882 (1967).

---

[5] Respondent does not dwell upon his understanding of the true rationale of the *Harris* case. For some help on this point, see Justice Frankfurter's dissent in *Harris*; the discussion by then Circuit Judge Harlan in *Commissioner* v. *Watson's Estate*, 216 F. 2d 941 (C.A. 2, 1954); *Estate of Robert Rodger Glen*, 45 T.C. 323, 336 (1966); Rev. Rul. 60–160, 1960–1 C.B. 374; and the comments of Professor Warren, Warren & Surrey, Federal Estate and Gift Taxation 221 (1961).

2. *Addition to tax under section 6651 (a).*—Respondent presses hard for the addition to tax for the failure of petitioner to file a gift tax return. He asserts that Lea was familiar with the Federal gift tax and that he has failed to show reliance upon counsel at the crucial time, i.e., the time of the transfer. While the question is indeed close, we hold for the petitioner because the record establishes to our satisfaction that petitioner did rely on the advice of fully informed, knowledgeable counsel not only at the time of the requested ruling in 1964, but also in 1955 before the transfer was made. Cf. *Estate of H. B. Hundley*, 52 T.C. 495 (1969) ; *May T. Hrobon, supra.* In our opinion his reliance constitutes "reasonable cause" under the prevailing rule.

3. *Capital gain income on divestiture stock.*—Under the relevant section, section 1111, it is plain that there would be long-term capital gain to the extent that the value of the General Motors divestiture stock received exceeded the basis of the duPont and Cristiana Securities stock held. The problem concerns the determination of the amount of that basis. Petitioner, as trustee, gave the stock a 100-percent step-up in basis evidently to reflect the gain that he thought was realized in connection with the 1955 transfer. He did not take into account, of course, the existence of a gift to the extent found above. Petitioner, as trustee, maintains this approach to the basis issue in this proceeding. Respondent, in his briefs, concedes that the trust would ordinarily be entitled to some increase in basis as a result of the gain taxable to the transferor.[6] His principal argument is that petitioner is estopped from claiming the increase in basis since the facts show that he failed to report the gain as he should have and withheld information that would have led the Commissioner to assess a tax. In the alternative, should we decide that there is no estoppel, respondent merely requests a reduction in the increase in basis to reflect the fact that the transfer transaction was in part a gift.[7]

---

[6] In his deficiency notice respondent simply states : "The basis of the duPont stock to the fiduciary is the same as the basis of Preston L. Spruance because Mr. Spruance made a gift of the stock. Section 1015 of the Internal Revenue Code." Respondent introduced his estoppel theory in an amendment to his answer. On brief he abandoned the idea that the transfer of stock to the trust should be viewed as a gift and rested his case almost entirely on the estoppel argument.

[7] We feel compelled to make the following brief explanation. Respondent's approach to this case is grounded in Rev. Rul. 57-507, 1957-2 C.B. 511, wherein a taxpayer transferred by way of a trust an income interest in appreciated stock to his ex-wife in exchange for a release of her marital rights. The ruling treats the transaction as if the stock itself had been sold and holds that capital gain is realized. Skipping over the capital gain holding (but see *Commissioner* v. *P. G. Lake, Inc.,* 356 U.S. 260 (1958) ; *May T. Hrobon*, 41 T.C. 476 (1964)), the view of the transaction as a sale of the stock leads respondent to the conclusion that if gain is realized on the transaction, the trust's basis for the stock should be allowed to increase. Hence the statement is made by respondent in his brief : "It is respondent's position that under Rev. Rul. 57–507 * * *, Preston recognized a taxable gain *on the transfer in trust of the separately held duPont and Christiana common stock* * * *."

We must note, however, that we would view the transaction as a sale of the income interest to the wife and allow her to amortize its cost. See, e.g., *Marianne Crocker Elrick,*

Assuming respondent is correct with regard to the estoppel facts, Lea, as trustee of the trust created for the benefit of his former wife and children, cannot be estopped by virtue of his act performed in an individual capacity. The rule has been succinctly stated: "Acts done in a representative capacity may not estop one in an individual capacity and vice versa." 10 Mertens, Law of Federal Income Taxation, sec. 60.03 (1970). (The facts here present the "vice versa" situation; none of the substantial reservations that may exist do exist with regard to this petitioner). Cf. *Stone* v. *White*, 301 U.S. 532 (1937) (a tax case); *Baum* v. *Continental Illinois National B. & T. Co.*, 230 F.2d 115 (C.A. 7, 1956) (a nontax case involving a testamentary trust). Compare *Crisman* v. *Lanterman*, 87 Pac. 89 (Cal. 1906), with *Thomasson* v. *Walker*, 190 S.E. 309 (Va. 1937), 110 A.L.R. 593—both involving estates rather than trusts. Also see and compare *C.B.C. Super Markets, Inc.*, 54 T.C. 882, 893–896 (1970), holding there is no "privity" for collateral estoppel purposes between a principal officer and controlling shareholder and his corporation; and *Henry M. Rodney*, 53 T.C. 287, 305–311 (1969), holding there is no "privity" for collateral estoppel purposes between a husband and wife who had filed joint income tax returns. Any other result herein would ignore the separate rights of the beneficiaries, the real parties in interest.[8]

As for respondent's alternative argument (that the gift element in the 1955 transaction must be recognized and the basis of the transferred stock reduced accordingly), we agree that the basis of that portion of the stock that was a gift should not be stepped up.[9] As for the portion

---

56 T.C. 903 (1971), on appeal (C.A.D.C., Jan. 27, 1972); *Estate of Daisy F. Christ*, 54 T.C. 493 (1970); *Allen M. Early*, 52 T.C. 560 (1969), reversed on other grounds 445 F. 2d 166 (C.A. 5, 1971). The trust did not purchase the income interest; therefore, it should not be given a separate basis in the income interest. It can only have a basis in the corpus—the stock—and that basis is a carryover basis under sec. 1015 (Basis of Property Acquired by Gifts and Transfers in Trust). Of course, to allow the purchaser of the income interest to amortize and also to allow the trust to increase its basis with which to offset gain upon future sale (or, as here, upon receipt of a sec. 1111 distribution) is to allow a double benefit. See generally *William N. Fry, Jr.*, 31 T.C. 522 (1958), affd. 283 F. 2d 869 (C.A. 6, 1960); Plumb, "Tax Effects of Sales of Life Interests in Trusts," 9 Tax L. Rev. 39 (1953).

But, in these particular circumstances, we will not go behind respondent's concession and decide to petitioner's detriment that there is no step-up in basis.

[8] The basis of our decision on this issue is, as indicated, that acts done by a person in his individual capacity generally may not work an estoppel on such person in his capacity as a fiduciary. However, we would point out that respondent may have suffered no detriment through Lea's representations because he may be able to recover Lea's deficiencies presently barred by the statute of limitations through an application of the mitigation provisions, secs. 1311–1315. This would depend on several factors, one being whether the trust's basis in the stock was determined under sec. 1015(a), as provided in sec. 1312(7)(B)(iii). We express no opinion on these matters since they were not argued by the parties but merely indicate the possible availability of the mitigation sections and the consequent effect on the estoppel question. Cf. *B. C. Cook & Sons, Inc.*, 59 T.C. 516 (1972).

[9] Respondent admits that the trust is entitled to a step-up in basis for any amount of gift tax which the Court finds to be owing in docket No. 2501–69.

of the stock that was not a gift, its basis in the hands of the trustee is the value of the consideration in effect "paid" to Lea. But at this point we run into another problem: The respondent argues that Lea "received" only the release of Margaret's marital and property rights, not the release of the minor children's support rights, "Since under the general rule one parent may not release the support rights of minor children"; therefore, the basis of the stock held in trust should not reflect the gain realized in connection with the transfer for the children's support rights.[10] We note one defect in respondent's approach. Under the terms of the separation agreement, which purported to resolve the matter of the children's support rights and provided for child support amounts, and the decree, which incorporated, approved, and directed performance of the agreement, the husband was discharged of his obligation to support the children in any manner not called for in the separation agreement. So whether or not the wife could lawfully release the children's support rights, they were released or discharged through the agreement and the decree. Cf. *Commissioner* v. *Halliwell*, 131 F.2d 642 (C.A. 2, 1942).

Lea "received" the release of both sets of rights. Their value can be measured by the value of that which Lea gave up in return. *United States* v. *Davis, supra; Philadelphia Park Amusement Co.* v. *United States*, 126 F. Supp. 184 (Ct. Cl. 1954); *Commissioner* v. *Mesta*, 123 F.2d 986 (C.A. 3, 1941). This amount is $610,416.76, the value of Margaret's right to receive the dividends for life, which value includes the value of amounts for the support of the children. Accordingly, given the peculiar circumstances of this case, the basis of the stock for section 1111 purposes amounts to at least the sum of (1) the amount paid by the wife and minor children for the property ($610,416.76), this being greater than Lea's adjusted basis for the property, and (2) the amount of the gift tax for which Lea is now liable. Sec. 1.1015–4(a), Income Tax Regs. The parties can work this out in their Rule 50 computations. Since the fair market value of the divestiture stock received in the 3 years in question ($455,333) is apparently less than the basis of the stock as computed above, there was no gain under section 1111.[11]

4. *Statute of limitations on assessment of income tax for 1962.*— The U.S. Fiduciary Income Tax Return filed by Lea, as trustee, for the taxable year 1962 was filed on October 15, 1963, in which he reported gross income of $43,396. Respondent's notice of deficiency with

---

[10] There is no question that gain is recognized in connection with the transfer for the children's rights as well as the wife's rights. See *United States* v. *Davis*, 370 U.S. 65 (1962); *Commissioner* v. *Halliwell*, 131 F. 2d 642 (C.A. 2, 1942). Respondent does not explain where the "lost" basis would go.

[11] We say "apparently" because while we have discussed the issues in terms of aggregate basis and gain figures, the parties will have to make their computations with respect to each separate block of duPont and Christiana stock.

respect to 1962 was sent to Lea, as trustee, on March 29, 1969. Since we have held as to the third issue that there was no gain under section 1111, it is apparent that Lea, as trustee, did not omit in excess of 25 percent of the gross income reported on the tax return. Consequently, the 6-year statute of limitations under section 6501(e)(1)(A) is not applicable. The 3-year period of section 6501(a) controls and thus bars the assessment of any income tax due for the year 1962.

To reflect our conclusions herein,

*Decisions will be entered under Rule 50.*